[No. 19071. Department Two. May 7, 1925.]

BERYL JAMES et al., Respondents, v. MacDOUGALL & SOUTHWICK COMPANY, Appellant.[1]

FALSE IMPRISONMENT (6)—WRONGFUL ARREST OR DETENTION—EVIDENCE—SUFFICIENCY. The evidence is insufficient, as a matter of law, to sustain a verdict for false arrest and imprisonment, where it appears that plaintiff was stopped on a street on the suspicion of shop-lifting and voluntarily accompanied a policeman and detective to defendant's store, where she was immediately dismissed.

Appeal from a judgment of the superior court for King county, Hall, J., entered October 10, 1924, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Reversed.

*Roberts & Skeel,* for appellant.

*Tucker, Hyland & Elvidge,* and *Mary H. Alvord,* for respondent.

MITCHELL, J.—This action was brought to recover damages for an alleged false arrest and imprisonment. Verdict and judgment were for the plaintiffs. Defendant appeals.

In substance, the complaint alleges that, on December 14, 1923, Mrs. Beryl James was lawfully in defendant's store to match bracelets with earrings she contemplated buying; that shortly thereafter and on that same day, when about to cross Union street at Second avenue, one Walker, an agent and employee of the

[1]Reported in 235 Pac. 812.

defendant, by force of arms, violently seized plaintiff, forcibly took her pocketbook and searched the same, and in the presence of many people, falsely and without probable cause, accused her of having stolen property belonging to the defendant, to wit: one bracelet, in her possession, and that Walker was acting in the scope of his authority; that Walker arrested her without a warrant and without probable cause; that he imprisoned her without authority and without cause, and that she was detained for a period of approximately half an hour, and that Walker, continuing to act for the defendant, did falsely arrest and falsely imprison the plaintiff; that defendant, with full knowledge of Walker's acts, continued to employ him, and thereby ratified his acts; that plaintiff suffered great bodily pain and mental anguish, and was humiliated, chagrined and disgraced, to her damage in the sum of $5,000. The defendant answered, denying all the allegations of the complaint.

The MacDougall & Southwick Company at that time had a yearly contract with another corporation by which that other corporation, for an annual charge, undertook to protect the property of the store from shoplifting, etc. Walker was an employee of that other corporation. It appears that he was not acquainted with those having charge of the mercantile business, nor they with him. Considerable of the record in this case, both testimony and arguments of counsel, is devoted to discussions as to whether Walker was the agent of the appellant and whether Mrs. James, hereinafter spoken of as the respondent, took the bracelet, neither of which we think very material to a decision of the case, and shall therefore assume, without so deciding, that Walker was such agent and that the respondent did not take the bracelet.

Respondent went into the store of the appellant to purchase earrings to match bracelets she carried in her purse. Failing to get what she wanted she left, and after visiting three other stores, went out on the street where she and Walker met. Her version of what occurred then and thereafter is substantially as follows: He touched her on the shoulder and said, "I want to speak to you, and he simply demanded me to open my purse." At another time she testified:

"He touched me on the shoulder and says, 'come over here,' and of course he frightened me because I had money in my purse. He said, 'Open up your purse, open it madam,' and of course I refused. He ordered me to go with him and I refused. I told him if he wanted to know what was in my purse to come out to the traffic cop and I would show him what was in my purse. Yes, he asked me to open the purse and I told him he could not open the purse. I knew there was a crossing policeman there. He was near us. Q. Then you went right over to the policeman, didn't you? A. Surely, I started over that way. Q. You started right over there? A. Yes. Q. You went right over to the policeman and he followed over there? A. Yes. Walker did not tell me he was an officer. He never made any statement of that kind. He never told me that he had any authority or that he had any warrant. Neither he nor the policeman said anything to me about going to jail. Neither of them mentioned arrest to me. Q. I asked you very carefully about how you went out to the policeman and you said you went ahead, didn't you? A. I certainly demanded him to follow me. Surely. Q. Do you think he was under arrest? A. He wanted me to turn and I refused to turn and I told him to go out there. Q. Now you say he turned down towards University Street? A. Yes. Q. But you did not follow him, did you? A. I would not. Q. You would not do it? A. No. Q. You didn't have to? A. Well, I didn't. Q. No, you didn't, of course you didn't. So you don't know where he was going when he turned down University. A. No, I

wasn't taking any chances following him. Q. Of course you didn't follow him, you didn't have to, did you? A. No."

In speaking of what occurred upon reaching the policeman, she said they (meaning the policeman and Walker) passed a few words and then the traffic man said: "What do you want to do, turn her in, I think it best to take her back to MacDougall's and let them identify their earrings." She further said she could not tell definitely what the policeman's words were. He suggested "Well we had better go up to the store and straighten this out." "The policeman treated me kindly. I had no reason to object to going with him." "Q. You had no reason to object, you went with him up there voluntarily, didn't you? A. I did. Q. Yes, you did, and you say you had no reason to object at all? A. No." The three walked up to the store, she between them. They went up to the office of Mr. Morford, the assistant secretary of appellant. She and the policeman stopped outside the office, Walker stepped inside and in a moment asked them into the office. Upon being seated, Walker handed the bracelets to Mr. Morford, saying "these are the bracelets." Morford looked the bracelets over carefully, upon her having said that their books would show she had purchased them on account several months before and asked him to look at their books. Morford did not look at the books, saying he could see that the bracelets had been worn. He made excuses and apologies for the occasion and excused the policeman and Walker. She had some further talk with Morford and then went away. She further testified that, so far as she knew, from the time Walker first spoke to her on the street until the time they got back to the store, no one heard anything that took place except Walker, the policeman and herself.

Upon being called on by her attorney to explain

what she meant by saying that she went voluntarily with the policeman and Walker to appellant's store, she said that she felt she was in a trap and that it was either to go to MacDougall's or to jail, and that she felt by going to MacDougall's she could prove her innocence, and that was what she meant by going voluntarily. As to her explanation that she felt she was in a trap and that it was either go to MacDougall's or to jail, that was, in our opinion, a conclusion of fact only that was expressly negatived by her other testimony.

The evidence on behalf of the appellant is in material respects more strongly against the respondent, but we have taken her version and account of the transaction because it is more favorable to the alleged cause of action.

As we view the case, it is one in which Walker in the discharge of his duties spoke to the respondent with reference to her having taken articles from the store, as he understood. He was engaged in an attempt to find out if it was true. That he was misinformed and she annoyed are not sufficient to constitute the tort alleged. He exercised no force, nor did he employ any threat to compel her to remain where she was, or to go where she did not want to. She so testified. There is no evidence to show but that she could have walked away wholly unmolested by him. He said nothing to her about arresting her or having her arrested; nor is there any evidence that he had, or claimed to have, any authority to arrest her. On the contrary, she chose her own course. Upon her own choice she took Walker to the policeman nearby and voluntarily took the kind and considerate suggestion of the policeman that all three go up to the store and straighten the matter out. That course was followed, after which she went her way. There is no claim, nor indeed can there

be any, that Walker caused the policeman to make any arrest or detention of the respondent, or that the policeman did either independently. Counsel for respondent disavow any intention of accusing the policeman of arresting the respondent.

In 11 R. C. L., p. 793, § 5, it is said:

"In order to constitute a case of false imprisonment it is essential that there should be some direct restraint of the person; but to constitute 'imprisonment,' in the sense in which the word is here used, it is not necessary that there should be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment."

In discussing the law on this subject, the supreme court of Kansas, in *Whitman v. Atchison, T. & S. F. R. Co.,* 85 Kan. 150, 116 Pac. 234, said:

"The essence of the tort is that the one complaining has been wrongfully detained against his will. Ordinarily the conduct violating the plaintiff's right must show legal or actual intent to interfere with and result in violating his right of freedom to come or go or stay when and where he wishes. 19 Cyc. 322. While actual force is not necessary, it is generally held essential that the conduct of the person complained of must show that, if necessary force will be used to detain, or that the person detaining him does so by some legal authority."

An instructive case, as to both the facts and the law, is *Sweeney v. Woolworth Co.,* 247 Mass. 277, 142 N. E. 50. In that case it was held that a motion for a directed verdict for the defendant should have been granted. The facts in the case as presented by and on behalf of the plaintiff, and as stated by the court, were as follows:

"The plaintiff, a minor, testified in substance that on the date of the alleged false imprisonment he went into the defendant's store, accompanied by another boy, to buy a pencil; that he had been there before; that he looked around for a pencil; that he went to the back counter and not seeing any went to the counters near the middle of the store, and, upon inquiry not obtaining what he wanted, started to leave the store; that when he was about six feet from the outer door Hardie came down in front of him and said, 'Give up'; that he replied, 'Give up what?' that he was frightened; that Hardie said, 'What you took off the counter,' and the witness answered, 'I didn't take anything'; that Hardie said, 'Yes, you did, . . . go down in the cellar,' pointing to the entrance, and the witness replied, 'No, I won't; I didn't take anything; here is the dime I got from my mother to buy the pencil, and that is all I got'; that Hardie then ordered the plaintiff to turn out his pockets; that he replied, 'No, I won't,' and Hardie said 'Yes, you will'; that the plaintiff said, 'You can turn them out yourself, if you want to,' and Hardie answered, 'No, I won't; I will have an officer down here in a minute, if you don't, and arrest you'; that then the plaintiff became frightened, and turned his pockets out, and showed Hardie a couple of handkerchiefs and a dime, and then Hardie said, 'Get out of the store, and never let me see you in it again'; and that the plaintiff then left the store. The plaintiff further testified that Hardie did not stand between him and the door, but by the counter at the side of the door; that he (the plaintiff) stood facing the counter with his back toward the street. He also testified that Hardie 'wouldn't let me move either side. He stood right there, I didn't move at all. He wouldn't let me go near the door'."

In discussing the law, the court said:

"The question is whether there was sufficient evidence to warrant a verdict for the plaintiff upon all the testimony most favorable to him. It is well settled that any restraint, although without physical contact of the person, is sufficient to constitute false imprison-

ment. *Jacques v. Childs Dining Hall Co.*, 244 Mass. 438, 138 N. E. 843, 26 A. L. R. 1329, and cases cited. We are of the opinion that the evidence was insufficient to justify a finding that the plaintiff was restrained of his liberty by anything that was said or done by Hardie. To charge the plaintiff with larceny was not of itself evidence of false imprisonment. There was nothing in what Hardie said that amounted to a restraint of the plaintiff. He insisted that the latter should turn his pockets out, and told him that if he did not do so he would have an officer there and arrest him. Thereupon the latter turned out his pockets as requested and left the store. Nor was there anything in what Hardie did to restrain the plaintiff of his liberty. While the plaintiff testified that Hardie would not let him move either side, that he stood right there, that he would not let him go near the door, yet it appears that during the conversation he was standing near the door between it and Hardie, and could have left the store, so far as appears, without any interference whatever. The plaintiff's statement that Hardie would not let him go near the door is a conclusion of fact which is expressly negatived by his other testimony. In other words, there was no evidence that during the brief conversation the plaintiff was prevented by acts of physical force, threats or otherwise from leaving the store at any time. There were no words or conduct which could have induced a reasonable apprehension by the plaintiff, notwithstanding his tender years, that he could not leave the defendant's premises without interference if and when he desired to do so.''

No good purpose would be promoted by discussing the many cases cited by respective counsel, an understanding of which requires an examination of the facts and the application of the law to the facts as discussed by the court in each of the cases. The authorities we have cited herein are sufficient as expressive of our views of the law applicable to the facts in this case to the effect that there was a failure of proof on the part

of the respondents to make out a case for the jury, and that the appellant's motion for a directed verdict should have been granted.

Reversed, with directions to the superior court to grant the motion and enter judgment for the appellant.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., concur.