[No. 4754–1.  Division One.  June 19, 1978.]

PATRICIA MOORE, *Appellant,* v. PAY'N SAVE CORPORATION, ET AL, *Respondents.*

*Sisson, Erickson, Balas, Brown & Jacobsen* and *Steven G. Sisson,* for appellant.

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes, John S. Ludwigson, Kargianis & Austin,* and *Don M. Gulliford,* for respondents.

DORE, J.—Patricia Moore commenced this action against Pay'N Save Corporation and an unknown employee alleging false imprisonment. Whatcom Security Agency was later joined as a third–party defendant by Pay'N Save. Moore appeals from the granting of summary judgment in favor of defendants.

## ISSUES

ISSUE 1: Are there material issues of fact as to whether Moore was falsely imprisoned?

ISSUE 2: Does the record indicate as a matter of law that the security guard had reasonable grounds under RCW 4.24.220 to detain Moore for investigation or questioning?

## DECISION

ISSUE 1:

■ Summary judgment should be granted only if, after considering all the pleadings, affidavits, depositions, and all reasonable inferences therefrom in favor of the nonmoving party, a trial court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974); *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). Summary judgment should not be used as a means to "cut litigants off from their right to a trial . . ." *Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 416, 553 P.2d 107 (1976). However, when a moving party demonstrates that there is no material issue of fact, the nonmoving party may not rest on the allegations in the pleadings but must set forth specific facts demonstrating that there is a material issue of fact. *LaPlante v. State, supra; Matthies v. Knodel,* 19 Wn. App. 1, 573 P.2d 1332 (1977).

The pleadings, affidavits, and the deposition of Patricia Moore establish that while in a Pay'N Save store in Bellingham, Washington, Moore took a can of hairspray to the checkout counter. She stood in line for several minutes, but later decided to leave. She put the hairspray on a counter inside the store and left the premises. In her deposition, she testified as to what transpired after she exited from the store:

Q Well now, after you stepped outside the store, then what happened?
A Well, then I walked around to get in the car.

Q And then what?
A And this girl come up and tapped me on the back.
Q Were you already in the car when she tapped you?
A No.
Q Were you just getting in?
A Just at the end of the car.
Q So then what did you do?
A I turned around.
Q What did she say or what did you say?
A She had a wallet or a badge with a wallet in her hand.
Q Yes.
A. And she asked me where the hairspray was.
Q What did you say?
A I said, "What hairspray?"

. . .
Q Then the girl who accosted you accosted you how soon after you had put it down?
A Oh, as soon as I walked out the door and walked out of the building and up to the car and I got around to the end of the car.
Q How long did all this take?
A I don't think any more than about five seconds, maybe.
Q Now, what you are telling me is that you had already dismissed this incident involving the spray from your mind in five seconds?
A Yes, because I wasn't thinking about that.

. . .
Q Then what did she say?
A And then she flipped my coat and she said, "The hairspray you took out of the store."
Q Then what did you say?
A I said, "I never took any hairspray out of the store."
Q Then what after that?
A Then she said, "Would you mind coming back in and showing me where you put the hairspray?"
Q Do you say alright?
A I said, "Yes, certainly."
I went back and showed her where I had put the hairspray down.
Q Now, you said—
A By this time we had about a dozen people standing there on the street.
Q You said you had left the hairspray in the store?

A Yes.

Q Then she said, "Would you mind coming back in to show me where you put it?"

A Yes.

Q Did you mind going back in?

A No, I didn't mind.

Q Did you show her where you had put it?

A Yes.

Q Was it still there?

A Yes.

Q Then what did she say or do?

A Then she just walked away from me. This is what I didn't mind.

Q Beg pardon?

A Then she just walked away from me which that I didn't like. I don't mind going back and showing her where the hairspray was.

Moore contends that these facts demonstrate a material issue of fact as to whether she was falsely imprisoned. We agree.

■ In an action for false imprisonment, the plaintiff must prove that the liberty of his or her person was restrained. *See* W. Prosser, *Law of Torts* § 11 (4th ed. 1971).

A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used. One acting under the apparent authority—or color of authority as it is sometimes described—or ostensibly having and claiming to have the authority and powers of a police officer, acts under promise of force in making an arrest and effecting an imprisonment.

If the words and conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars.

*Kilcup v. McManus*, 64 Wn.2d 771, 777–78, 394 P.2d 375 (1964). If the undisputed facts indicate that the person voluntarily accompanied a policeman or detective back to the

store, the person is not restrained or imprisoned as a matter of law. *James v. MacDougall & Southwick Co.*, 134 Wash. 314, 235 P. 812 (1925). Likewise, the undisputed facts may indicate that the person was restrained by a threat of force, actual or implied. *Kilcup v. McManus, supra.* However, whether a person has a reasonable basis for believing he or she is restrained or imprisoned is generally a question of fact for the jury. *Harris v. Stanioch,* 150 Wash. 380, 273 P. 198 (1928). *See* 32 Am. Jur. 2d *False Imprisonment* § 10 (1967).

> It is essential . . . that the restraint be against the plaintiff's will; and if he agrees of his own free choice to surrender his freedom of motion, as by remaining in a room or accompanying the defendant voluntarily, to clear himself of suspicion or to accommodate the desires of another, rather than yielding to the constraint of a threat, then there is no imprisonment. This gives rise, in borderline cases, to questions of fact, turning upon the details of the testimony, as to what was reasonably to be understood and implied from the defendant's conduct, tone of voice and the like, which seldom can be reflected accurately in an appellate record, and normally are for the jury.

(Footnotes omitted). W. Prosser, *Law of Torts* § 11, at 44 (4th ed. 1971).

Here, the record indicates that after Moore left the store, she was approached by a security guard who identified herself by displaying a badge. The guard asked Moore where the hairspray was, and following Moore's response, "What hairspray?" the security guard flipped open Moore's coat and said, "The hairspray you took out of the store." From these facts, we cannot say that as a matter of law Moore's freedom was not restrained. The security officer was acting under apparent authority, *i.e.*, claiming to have the authority and power of a police officer. Although the security officer subsequently "requested" Moore to accompany her back into the store, the "request" was implicitly coercive. *Cf. State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977). The question of whether Moore reasonably believed that her

liberty was restrained was a question for the jury. Accordingly, the trial court erred in granting summary judgment on the ground that Moore was not imprisoned.

ISSUE 2:

■ The defendants contend that even if there is a material issue of fact as to whether Moore was imprisoned, the security officer, as a matter of law, had a privilege pursuant to RCW 4.24.220 to detain Moore for purposes of investigation. We disagree. RCW 4.24.220 provides:

> In any civil action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a peace officer or by the owner of the mercantile establishment, his authorized employee or agent, and that such peace officer, owner, employee or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit larceny or shoplifting on such premises of such merchandise. As used in this section, "reasonable grounds" shall include, but not be limited to, knowledge that a person has concealed possession of unpurchased merchandise of a mercantile establishment, and a "reasonable time" shall mean the time necessary to permit the person detained to make a statement or to refuse to make a statement, and the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise.

Under this statute, the security officer had a qualified privilege to detain Moore if the officer had "reasonable grounds" to believe that Moore was committing, or attempting to commit, larceny or shoplifting. The question of whether the security officer had reasonable grounds under this statute can be analogized to the question of probable cause. Generally, whether probable cause exists to justify an arrest or detention is a factual issue to be resolved by the jury. *Smith v. Drew,* 175 Wash. 11, 26 P.2d 1040 (1933); *Coles v. McNamara,* 131 Wash. 377, 230 P. 430

(1924). The record is devoid of any evidence, such as an affidavit of the security guard, which would enable the trial court to determine whether the security guard "had reasonable grounds to believe that [Moore] was committing or attempting to commit larceny or shoplifting". RCW 4.24.220.

Consequently, the record does not support the defendants' contention that any detention was privileged under RCW 4.24.220, *i.e.,* that as a matter of law, the security guard had reasonable grounds to believe that Moore was shoplifting. This issue must be resolved by testimony at trial. *See generally* Annot., 47 A.L.R.3d 998 (1973).

Reversed.

FARRIS, C.J., and WILLIAMS, J., concur.