IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT A. CHILDRESS, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>BOEING AEROSPACE OPERATIONS, )<br>INC., and ALLIEDBARTON SECURITY )<br>SERVICES LLC, )<br>)<br>Respondents. )<br>_____ ) | No. 78233-9-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: April 29, 2019 |

SMITH, J. — Robert Childress arrived at work in his Jeep and was confronted by a security guard who accused him of parking illegally. With the security guard standing in front of the Jeep, Childress slowly drove away. He was fired for making "aggressive actions" with his car. Childress sued his employer and the security guard company, claiming intentional infliction of emotional distress, assault, battery, false imprisonment, and wrongful discharge in violation of public policy. The trial court dismissed his claims. We affirm.

FACTS

On April 20, 2017, Childress, an employee of The Boeing Company,[1] drove to work for an overtime shift. He parked his Jeep to the right of a rolling

---

[1] The parties agree that Childress was employed by The Boeing Company and that he erroneously named "Boeing Aerospace Operations, Inc.," as a defendant.

gate, exited his car, and entered a building to clock in. When he returned to his car, Childress was confronted by a security guard employed by AlliedBarton Security Services LLC. The guard accused him of parking illegally and threatened to give him a parking ticket. Childress slowly started driving away. The guard moved in front of the car, struck the hood with his hands, and shouted. Childress continued driving to the employee parking lot.

There, Childress was again confronted by the security guard, who accused him of a hit and run. Childress left the parking lot, clocked out, and returned to his car. Two additional security cars were positioned around his Jeep. Childress entered his car and slowly maneuvered toward the exit. In so doing, he struck one of the security cars. Childress's Jeep was not damaged, but there were fingerprints and scratches on the hood from the first encounter with the security guard. The next day, Boeing suspended Childress. On June 6, 2017, Boeing fired him because he "'engaged in aggressive actions with [his] personal vehicle.'"

Childress filed a complaint against Boeing and AlliedBarton on July 14, 2017. He alleged causes of action for intentional infliction of emotional distress, assault, battery, false imprisonment, and wrongful termination in violation of public policy. Boeing moved to dismiss under CR 12(b)(6). AlliedBarton joined Boeing's motion, additionally moving for judgment on the pleadings under CR 12(c). Childress responded and included a video of the first incident with the security guard. The trial court watched the video and dismissed the complaint under CR 12(b)(6) and (c). Childress appeals.

2

## DISCUSSION

We review de novo a trial court's ruling granting a CR 12(b)(6) motion to dismiss.[2] Cutler v. Phillips Petro. Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). CR 12(b)(6) provides for dismissal of a complaint if it fails to state a claim upon which relief can be granted. Dismissal is warranted only if the court concludes beyond a reasonable doubt that the plaintiff cannot prove any set of facts that would justify recovery. Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998). We presume that all facts alleged in the plaintiff's complaint are true. Tenore, 136 Wn.2d at 330.

### Intentional Infliction of Emotional Distress

Childress first argues that the trial court erred in dismissing his claim for intentional infliction of emotional distress.

To prove intentional infliction of emotional distress, a plaintiff must show "'(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 840, 355 P.3d 1100 (2015) (internal quotation marks omitted) (quoting Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014)). Although a jury ultimately determines if conduct is sufficiently outrageous, the court makes an initial determination

---

[2] In ruling on the motion to dismiss, the trial court considered the video attached to Childress's response. With some exceptions, considering information outside the pleading converts a motion to dismiss into one for summary judgment. CR 12(b). But the outcome of this case does not change under a summary judgment standard. Neither party argues that they were prejudiced by the court's failure to proceed under CR 56. And even if we viewed all the evidence in the record in the light most favorable to Childress, we would nevertheless affirm on a summary judgment standard of review.

3

whether reasonable minds could differ about "'whether the conduct was sufficiently extreme to result in liability.'" Trujillo, 183 Wn.2d at 840 (internal quotation marks omitted) (quoting Lyons, 181 Wn.2d at 792). To establish extreme and outrageous conduct, a plaintiff must show that the conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Trujillo, 183 Wn.2d at 840 (internal quotation marks omitted) (quoting Lyons, 181 Wn.2d at 792).

In dismissing the case, the trial court reasoned that "getting angry at somebody for where they park, standing in front of their vehicle and hitting it repeatedly with one's hands, is not extreme and outrageous conduct . . . otherwise, almost any demonstration of anger and irritation at another motorist would become tortious conduct." On appeal, Childress cites no authority supporting his contention that such conduct is extreme and outrageous. Indeed, in Keates v. City of Vancouver, 73 Wn. App. 257, 869 P.2d 88 (1994), similar conduct did not support a claim for intentional infliction of emotional distress. In that case, a police officer yelled in a suspect's face, accusing him of murdering his wife. The court held that while this conduct was insulting and unbecoming, it was not extreme and outrageous. As in Keates, the security guard here may have unnecessarily escalated the encounter with Childress by standing in front of the car and striking the hood, but such conduct is not extreme or outrageous.

Childress fails to allege facts sufficient to state a claim for intentional infliction of emotional distress.

4

Battery and Assault

Childress argues that the trial court erred by dismissing his claims for battery and assault. He contends that his Jeep is part of his person, so striking it constitutes battery and assault.

"'[B]attery' is an intentional and unpermitted contact with the plaintiff's person." Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 504, 325 P.3d 193 (2014). A defendant is liable for battery if (a) "'he [or she] acts intending to cause a harmful or offensive contact with the [plaintiff or a third party], or an imminent apprehension of such contact, and (b) a harmful or offensive contact with the [plaintiff] directly or indirectly results.'" Kumar, 180 Wn.2d at 504 (alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 13 (1965)).

In support of his argument that striking a person's car is equivalent to striking the person inside, Childress cites Restatement (Second) of Torts § 18 cmt. c at 31 (Am. Law Inst. 1965):

> Unpermitted and intentional contacts with anything so connected with the body as to be customarily regarded as part of the other's person and therefore as partaking of its inviolability is actionable as an offensive contact with his person. There are some things such as clothing or a cane or, indeed, anything directly grasped by the hand which are so intimately connected with one's body as to be universally regarded as part of the person. . . . Thus, the ordinary man might well regard a horse upon which he is riding as part of his personality but, a passenger in a public omnibus or other conveyance would clearly not be entitled so to regard the vehicle merely because he was seated in it.

He contends that "Mr. Childress in his Jeep, for purposes of his battery claim, is the person sitting atop their horse." The trial court rejected this argument, reasoning that

5

> [h]orses could be the subject of a battery because[ ] . . . the person on a horse is intimately connected with [the] animal. It is hard to think of any place one could strike a horse and not physically endanger the person on the horse, because horses don't like being struck. That's well known. They buck. They run. They throw off the person that is on the horse . . . Cars, fortunately, do not do these things, and that's why horses aren't cars, and cars aren't horses when it comes to the tort of battery.

We agree with the trial court. Childress fails to state a claim for battery because under these circumstances, his vehicle cannot be regarded as part of his person.

Childress's citation to Kumar is unpersuasive. In that case, the plaintiffs alleged that their employer deceived them into eating food in violation of their religious beliefs. The court held that these facts supported a claim of battery. Kumar, 180 Wn.2d at 505-06. But here, unlike in Kumar, there was no contact with Childress's body. The trial court did not err in dismissing the battery claim.

The claim for assault fails for similar reasons. To state a claim for assault, a plaintiff must allege an act that creates an apprehension of a battery. McKinney v. City of Tukwila, 103 Wn. App. 391, 408, 13 P.3d 631 (2000). Having established that the facts do not support a claim for battery, a reasonable person in these circumstances would not apprehend harmful or offensive contact with their person. The trial court did not err in dismissing Childress's assault claim.

False Imprisonment

Childress argues that the trial court erred in dismissing his claim for false imprisonment because security guards "erected actual physical barriers to remove any reasonable avenue of escape."

6

"In an action for false imprisonment, the plaintiff must prove that the liberty of his or her person was restrained." Moore v. Pay'N Save Corp., 20 Wn. App. 482, 486, 581 P.2d 159 (1978) (citing W. PROSSER, LAW OF TORTS § 11 (4th ed. 1971)). A person is restrained when deprived of either liberty of movement or freedom to remain in the place of their lawful choice. Moore, 20 Wn. App. at 486. Such restraint may be accomplished by physical force, threat of force, or by conduct reasonably implying that force will be used. Moore, 20 Wn. App. at 486.

The trial court dismissed Childress's false imprisonment claim because "according to the Plaintiff's own Complaint, each time that [blocking the plaintiff] was attempted, the Plaintiff slowly and carefully drove away so no imprisonment occurred, whatever may have been intended." The trial court correctly noted that even though the security guards attempted to block Childress's movement, they did not actually do so. Under these circumstances, Childress was not deprived of liberty of movement. The trial court did not err in dismissing the claim for false imprisonment.

Wrongful Termination in Violation of Public Policy

Childress argues that the trial court erred in dismissing his wrongful termination claim. He contends that there is a clear public policy that individuals may defend themselves from "wrongful detainment and threat of violence."

To sustain the tort of wrongful discharge in violation of public policy, Childress must establish (1) "'the existence of a clear public policy (the *clarity* element),'" (2) "'that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element),'" (3) "'that the public-policy-

7

linked conduct caused the dismissal (the *causation* element),'" and (4) "'[t]he defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).'" Ellis v. City of Seattle, 142 Wn.2d 450, 459, 13 P.3d 1065 (2000) (quoting Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941, 913 P.2d 377 (1996)).

"To determine whether a clear public policy exists, we ask whether the policy is demonstrated in 'a constitutional, statutory, or regulatory provision or scheme.'" Danny v. Laidlaw Transit Servs., Inc., 165 Wn.2d 200, 207-08, 193 P.3d 128 (2008) (internal quotation marks omitted) (quoting Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232, 685 P.2d 1081 (1984)). Judicial decisions can establish public policy, but "'courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.'" Danny, 165 Wn.2d at 208 (internal quotation marks omitted) (quoting Thompson, 102 Wn.2d at 232). "To qualify as a public policy for purposes of the wrongful discharge tort, a policy must be 'truly public' and sufficiently clear." Danny, 165 Wn.2d at 208 (citing Sedlacek v. Hillis, 145 Wn.2d 379, 389, 36 P.3d 1014 (2001)).

Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) reporting employer misconduct. Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 935-36, 913 P.2d 377 (1996).

Childress's complaint alleges:

> 9.2    Pursuant to the relevant tort law of Washington State, in their course of business, Defendants willfully, wantonly, and intentionally terminated Mr. Childress pursuant to committing an assault, battery, and unlawful imprisonment against Mr. Childress. By terminating Mr. Childress for exercising a legal right or privilege, Defendants have satisfied the elements of the tort Wrongful Termination in Violation of Public Policy in Washington State.
>
> 9.3    "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the state collectively." Generally, one violation of public policy is, "where the termination resulted because the employee exercised a legal right or privilege." On these facts and video evidence, a wrongful termination in violation of public policy occurred.

(Citations omitted.) Childress fails to identify a clear public policy in his complaint. Instead, he makes a legal conclusion that he was exercising a legal right or privilege. We need not accept a complaint's legal conclusions. Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 843, 347 P.3d 487 (2015).

Childress argues that "[i]t is not arguable that one's exercise of their right to be free from wrongful detainment and threat of violence is a recognized public policy of the State of Washington." But he does not cite legislative or judicial recognition of this policy. His reliance on Danny v. Laidlaw is misplaced. In Danny, the court analyzed "[t]he legislature's consistent pronouncements over the last 30 years" before declaring that Washington has a clear public policy protecting domestic violence survivors. Danny, 165 Wn.2d at 213. We decline to extend Danny's narrow declaration of public policy to the facts of this case.

9

Because Childress has failed to allege or explain a clear public policy related to his conduct, his claim for wrongful termination fails.[3]

Attorney Fees

Defendant AlliedBarton requests an award of attorney fees for a frivolous appeal under RAP 18.9(a). An appeal is frivolous "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997) (citing Mahoney v. Shinpoch, 107 Wn.2d 679, 691, 732 P.2d 510 (1987)). Applying this standard, we decline to award attorney fees for a frivolous appeal.

We affirm.

WE CONCUR:

---

[3] Because we affirm the trial court's dismissal, we need not reach Boeing's arguments that it is not vicariously liable for the conduct of AlliedBarton employees and that Childress improperly named the defendant in its complaint.