IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| CHRISTINE FOE,<br><br>                              Respondent,<br><br>        v.<br><br>KEITH WILLSON,<br><br>                              Appellant. | No. 78848-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 4, 2019 |

CHUN, J. — Christine Foe sued Keith Willson, claiming negligence, negligent infliction of emotional distress, negligent entrustment, and unlawful imprisonment. The trial court granted Willson's motion for summary judgment and dismissed Foe's claims. Foe appeals. Because Foe does not provide a basis to reverse the trial court's decision, we affirm.

## I. BACKGROUND

Foe suffers from schizoaffective disorder, bipolar type. In January 2017, Foe experienced a manic episode that resulted in the City of Kirkland charging her with criminal trespass in the second degree. Foe asked Willson, a friend, for help posting bail and he did so.

In February 2017, in the same case, Foe and Willson attended a hearing in which the Kirkland Municipal Court released Foe on bail but ordered her to return for a pretrial hearing on the morning of March 20. Willson then drove Foe

to Portland, Oregon (where Foe resided) and she repaid him the bail amount. Foe then declined Willson's offer to assist further with the Kirkland criminal case.[1]

On March 10, Foe experienced another manic episode while driving in Oregon. She failed to stop for a pursuing police officer and "got into a serious car accident." A grand jury in Washington County[2] indicted Foe for fleeing a police officer, reckless driving, and reckless endangerment. During Foe's time in jail, she did not call or request any help from Willson. Nevertheless, Willson still learned about Foe's Oregon criminal case.

On March 19, Willson drove from his home in Mukilteo, Washington, to Oregon with the intention of transporting Foe to the March 20 court appearance in Kirkland. Willson assisted in obtaining Foe's release from jail. Both Foe and Willson signed a "Release Agreement" with the Washington County Circuit Court. In pertinent part, Foe agreed to: (1) appear in the Washington County court for a hearing on March 20 at 4:00 p.m., (2) obey all laws, and (3) "travel to the state of Washington for court purposes." In another section of the agreement, Willson signed a statement that said:

> I agree to be responsible for and supervise the within named defendant [Foe] and to notify the Court immediately if the defendant breaches any of the conditions of [their] release. I agree to be aware of the conditions of this release, the defendant's schedule of court appearances and to aid the defendant in attending all of his/her court appearances. I understand that my obligations under this agreement continue in full force and effect until the case(s) is/are completed in court, provided the defendant is on release status. I understand that

---

[1] Foe, age 39 at the time, "wanted nothing to do with" 81-year-old Willson. Foe felt uncomfortable around Willson because Foe perceived some of Willson's actions as unwanted romantic gestures.

[2] Washington County is in the State of Oregon.

2

to knowingly aid the defendant in a breach of his/her release agreement or to knowingly fail to report the defendant's breach is punishable by CONTEMPT OF COURT with a penalty of 6 months in jail or $500 fine or both.

Willson believed that they could drive to Mukilteo in the afternoon of March 19, appear for the Kirkland court appearance the next morning, and drive back to Oregon for Foe's 4:00 p.m. court appearance.

After leaving the jail, they ate at a nearby fast-food restaurant and got into Willson's car to drive north to Mukilteo. Foe neither objected nor refused to get into Willson's car. Before reaching the freeway, however, Foe told Willson: "This is my car. I don't want you in it." Foe then moved the steering wheel and Willson stopped the car. Foe exited the car and Willson "ordered" her to get back in the car. Foe reentered the car because "[i]t was almost dark" and they "were in a rural area."

During the 200-mile journey north that evening, Foe acted bizarrely. Among other things, she jumped back and forth from the front to the back seat of the car, stuck parts of her body out the car window, played with the steering wheel and dashboard controls, threw Willson's mobile phone out of the car, talked incoherently, and took off clothing.[3]

After arriving at Willson's home, Foe slept in an upstairs room that night without further incident.

On the morning of March 20, Willson attempted to get Foe to attend the Kirkland Municipal Court pretrial hearing, but she refused. Wearing only

---

[3] Both parties attribute Foe's behavior in the car that evening to her having a manic episode.

sweatpants and a bra, Foe went into Willson's backyard and rolled on the grass. Willson then pulled Foe by the hands and "forced [her] to come with him to court." But Foe ran outside the house again, this time into the front yard, and continued to act in a bizarre manner. Officers of the Mukilteo Police Department responded to Willson's house "for a report of a suspicious female" and for a "welfare check."

When Officer Jeremy Ballinger arrived on the scene, Foe "quickly brushed past" Willson, went into his house, and ran into an upstairs room. The room contained a number of antique pistols, including one stored "inside a wooden box on a desk" and the others "in a closet in leather cases."[4] Willson told Officer Ballinger that Foe was "a family friend who was bi-polar and was having an, [sic] 'episode.'"

As Sergeant Steven Fanning stood in Willson's front yard, Foe appeared at an upstairs window. Sergeant Fanning saw Foe with a handgun. She then pointed the gun at Sergeant Fanning and proceeded to drop various items out of the second floor window.[5] Officers called for additional assistance and led Willson away from the house.

Members of a SWAT[6] team responded and relieved the officers. At some point during the process, they shot Foe in the leg with a rubber bullet. The

---

[4] Willson told the police officers that "there were numerous firearms in the room" that Foe occupied but "he did not think there was any ammunition in the room."

[5] Among the items Foe dropped were glass jars filled with coins, a metal folding chair, papers, and a pistol.

[6] Special Weapons and Tactic (SWAT).

4

SWAT team eventually took Foe into custody.

In September 2017, Foe pleaded guilty in Snohomish County Superior Court to third degree assault for pointing a pistol at Sergeant Fanning.

In January 2018, Foe filed a Complaint in the Snohomish County Superior Court against Willson, asserting claims for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent entrustment, and unlawful imprisonment. Foe later filed an Amended Complaint and, subsequently, withdrew the intentional infliction of emotional distress claim.

In June 2018, Willson moved for summary judgment dismissal of all of Foe's remaining claims. Willson argued that Foe could not establish all the elements of the asserted claims. Foe responded to Willson's motion and supported that response with her declaration, along with a single exhibit.

In July 2018, at the summary judgment hearing, the trial court initially struck portions of Foe's declaration as hearsay. Then, after considering the pleadings and hearing arguments from the parties, the trial court granted Willson's motion and dismissed all of Foe's claims. Foe appeals.

## II. DISCUSSION

Foe claims the trial court's summary judgment order was improper for various reasons.[7] We disagree and affirm.

---

[7] As an initial matter, we observe that portions of Foe's briefing are incomprehensible. In violation of the Rules of Appellate Procedure, in certain instances, Foe fails to provide coherent legal argument supported by citations to authority or references to the record. RAP 10.3(a)(6). An appellate court will not search through the record for evidence relevant to a litigant's arguments. Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966). Moreover, we may decline to consider issues unsupported by legal argument and citation to relevant authority. Saunders v.

## A. Standard of Review

We review an order granting summary judgment de novo. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Berger v. Sonneland, 144 Wn.2d 91, 102, 26 P.3d 257 (2001).

## B. Preliminary Issue

Foe assigns error to the trial court's failure to identify the portions of her declaration that it struck as hearsay and refused to consider at summary judgment. But because Foe does not support this claim of error with legal authority or argument, we decline to address it.[8] Island County v. Mackie, 36 Wn. App. 385, 395, 675 P.2d 607 (1984) ("It is well settled that assignments of error unsupported by legal argument need not be considered on appeal."); see also RAP 10.3(a)(6).

## C. False Imprisonment

Foe first argues that the trial court erred by summarily dismissing the "false imprisonment"[9] claim.

---

Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989). Thus, to the extent that we are able to discern Foe's arguments on appeal, we address them.

[8] And in any event, the consideration of the apparent hearsay portions of the declaration does not affect our analysis.

[9] Foe uses the terms "false imprisonment" and "unlawful imprisonment" interchangeably.

"In an action for false imprisonment, the plaintiff must prove that the liberty of his or her person was restrained." Moore v. Pay'N Save Corp., 20 Wn. App. 482, 486, 581 P.2d 159 (1978) (citing W. PROSSER, LAW OF TORTS § 11 (4th ed. 1971)). A person is restrained when "deprived of either liberty of movement or freedom to remain in the place of [their] lawful choice." Moore, 20 Wn. App. at 486. Such restraint "may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used." Moore, 20 Wn. App. at 486. However, if "the undisputed facts indicate that the person voluntarily accompanied" another individual to a location, "the person is not restrained or imprisoned as a matter of law." Moore, 20 Wn. App. at 486-87 (citing James v. MacDougall & Southwick Co., 134 Wash. 314, 235 P. 812 (1925)).

Even when viewing the evidence most favorably to Foe, there are no facts showing that Willson deprived Foe of liberty of movement. Rather, the evidence indicates that Foe voluntarily entered an agreement with an Oregon court to travel with Willson "to the state of Washington for court purposes."[10] Upon release from jail in Oregon, Foe did not object to getting into Willson's car. Even after forcing Willson to stop the car by pulling on the steering wheel, Foe chose to reenter Willson's car on their journey north to Mukilteo.

Upon arriving in Mukilteo, Foe slept overnight at Willson's home. There is no evidence that Willson restricted Foe's freedom of movement during that time.

---

[10] Though Foe asserts that Willson used a "false identity" to remove Foe from jail, she failed to provide any admissible evidence to support that assertion.

Nor is there any evidence that, on the following day, Willson limited Foe's freedom by forcing her to remain inside his home. On the morning of March 20, Foe ran into Willson's back yard. After Willson pulled her hands, Foe "ran outside" into the front yard. Once police officers arrived on the scene, Foe ran by Willson and into an upstairs room. The evidence indicates that Willson was unable to restrict Foe's ability to move as she desired. Under these circumstances, we conclude that Willson's actions did not confine Foe in a manner that deprived her of freedom of movement. See RESTATEMENT (SECOND) OF TORTS § 36 (1965).[11] The trial court did not err in dismissing Foe's false imprisonment claim.[12]

D. Negligence

Foe next argues that the trial court erred by dismissing the negligence claim. Foe contends that, based on their special relationship and Willson's awareness of her bipolar diagnosis, he had a duty to secure her safety (e.g., prevent Foe from engaging in criminal activity).

---

[11] Section 36 states:
> (1) To make the actor liable for false imprisonment, the other's confinement within the boundaries fixed by the actor must be complete.
> (2) The confinement is complete although there is a reasonable means of escape, unless the other knows of it.
> (3) The actor does not become liable for false imprisonment by intentionally preventing another from going in a particular direction in which he [or she] has a right or privilege to go.

[12] Given our disposition of this claim, we need not address Foe's assertion that the trial court interpreted the parties' release agreement with the Oregon court as overriding Willson's duty not to engage in false imprisonment.

8

To establish negligence, a plaintiff must prove four basic elements: "(1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) resulting injury; and (4) that the breach was the proximate cause of the injury." Folsom v. Burger King, 135 Wn.2d 658, 671, 958 P.2d 301 (1998). Because "a negligence action will not lie if a defendant owed a plaintiff no duty of care, the primary question is whether a duty of care existed." Folsom, 135 Wn.2d at 671; Funkhouser v. Wilson, 89 Wn. App. 644, 653, 950 P.2d 501 (1998) ("Summary judgment dismissal of negligence claims is proper if the defendant owed no duty to the plaintiff."). "The existence of a duty is a question of law." Folsom, 135 Wn.2d at 671.

Washington courts recognize a limited duty to control the actions of a third person to prevent harm to others "in cases where: (1) a 'special relationship' exists between the defendant and either the victim or the tort-feasor; or (2) the defendant acts or fails to act while knowing that doing so involves an unreasonable risk of harm to the plaintiff via the conduct of the tort-feasor." Funkhouser, 89 Wn. App. at 653 (citing RESTATEMENT (SECOND) OF TORTS § 315; § 302B; see also Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 227-30, 802 P.2d 1360 (1991)); see also Webstad v. Stortini, 83 Wn. App. 857, 866, 924 P.2d 940 (1996) ("Furthermore, the law provides no general duty to protect others from self-inflicted harm[.]") (citing Donaldson v. Young Women's Christian Ass'n of Duluth, 539 N.W.2d 789, 792 (Minn. 1995)).

9

A duty of care is warranted by the existence of a "special relation" between the parties. RESTATEMENT (SECOND) OF TORTS § 315 (1965). Section 315 provides:

> There is no duty so to control the conduct of a third person as to prevent him [or her] from causing physical harm to another unless
>
>> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>>
>> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Our Supreme Court has instructed that a duty will be imposed under § 315 "only upon a showing of a 'definite, established and continuing relationship between the defendant and the third party.'" Taggart v. State, 118 Wn.2d 195, 219, 822 P.2d 243 (1992) (quoting Honcoop v. State, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988)).

"One who takes charge of a third person whom he [or she] knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him [or her] from doing such harm." RESTATEMENT (SECOND) OF TORTS § 319 (1965). The Taggart case is instructive here.

In Taggart, our Supreme Court concluded that by virtue of their statutory authority to supervise parolees, parole officers "take charge" of them:

> Parole officers have the statutory authority under RCW 72.04A.080 to supervise parolees. The State can regulate a parolee's movements within the state, require the parolee to report to a parole officer, impose special conditions such as refraining from using alcohol or undergoing drug rehabilitation or psychiatric treatment, and order the parolee not to possess firearms. The parole officer is

the person through whom the State ensures that the parolee obeys the terms of his or her parole. Additionally, parole officers are, or should be, aware of their parolees' criminal histories, and monitor, or should monitor, their parolees' progress during parole. Because of these factors, we hold that parole officers have "taken charge" of the parolees they supervise for purposes of § 319. When a parolee's criminal history and progress during parole show that the parolee is likely to cause bodily harm to others if not controlled, the parole officer is under a duty to exercise reasonable care to control the parolee and to prevent him or her from doing such harm.

Taggart, 118 Wn.2d at 219-20.

The Taggart court then held "that a parole officer may 'take charge' of a parolee, thereby assuming the duty to protect against reasonably foreseeable dangers, despite the absence of a custodial relationship and without exercising the 'continuing hourly or daily dominance and dominion' over that parolee." Taggart, 118 Wn.2d at 223-24 (quoting Fox v. Custis, 235 Va. 69, 372 S.E.2d 373 (1988)).

Here, Willson agreed with an Oregon court to supervise Foe in traveling to Washington State for court purposes and to be responsible for returning Foe to Oregon for another court appearance. The critical question, then, is whether Willson "took charge" of Foe by virtue of that agreement. The record before us indicates that Willson had none of the responsibilities or functions identified by the Taggart court as indicia of control.

First, unlike a parole officer who enforces the terms of parole, Willson's responsibilities included only being aware of Foe's "schedule of court appearances" and aiding Foe "in attending all" court appearances. It cannot be

11

said that Willson was charged with supervising or enforcing any other aspects of Foe's conduct.

Second, if Foe failed to perform in accordance with the agreement, Willson's only recourse would have been only to report that she was not in compliance. Nothing in the record indicates that Willson would have been required to compel Foe's performance. In fact, the evidence on record establishes that Willson was unable to influence Foe's behavior. There is no evidence to show that Foe's failure to perform would have triggered other duties for Willson. In short, the facts of this case do not indicate that Willson "took charge" of Foe.

Foe also argues that, by removing her from the Oregon jail and transporting her to Washington, Willson undertook a duty to "secure the safety" of Foe pursuant to RESTATEMENT (SECOND) OF TORTS § 324 (1965). Foe's reliance on § 324 here is misplaced.

In the course of discussing "the importance of 'special relationships' in relation to tort law," our Supreme Court observed the following about tort actions arising out of a duty imposed by § 324:

> Some torts, for example, those involving the failure to rescue or warn after a gratuitous promise to do so, require some type of representation, either express or implied, by the promisor to the promisee or a third party, to create a special relationship . . . The failure to do what is gratuitously promised, followed by injury stemming from the failure, is the very essence of these types of torts. See RESTATEMENT (SECOND) OF TORTS § 324 (1965). In this context, the assurances made by the promisor both create the relationship as well as define the duty, that is, if the promisor fails to do what [they] promised to the detriment of the promisee, the duty has necessarily

12

been breached. Importantly, the duty is limited to what is promised. The promise both creates and limits the duty.

Cummins v. Lewis County, 156 Wn.2d 844, 867-68, 133 P.3d 458 (2006) (internal citations omitted).

Here, there is no evidence in the record that Willson made any gratuitous promises to Foe. Nor is there any evidence that Willson failed to fulfill any promise to Foe that resulted in Foe being injured.

Absent evidence that Willson took charge of, or gratuitously made and broke a promise to, Foe, no special relationship can be said to exist between them. Furthermore, absent a special relationship, Willson had no duty, as a matter of law, to control Foe in an effort to prevent Foe from engaging in criminal activities.

In failing to establish a duty, Foe cannot sustain a negligence claim against Willson. The trial court did not err in summarily dismissing it.[13]

E. Negligent Entrustment

Foe also argues that the trial court erred by dismissing the negligent entrustment claim because Willson knew that she could not be entrusted with firearms.

A party in control of an instrumentality, such as a firearm, may be held liable for damages resulting from the use of that instrumentality when it is supplied or entrusted to someone who is incompetent. Bernethy v. Walt Failor's, Inc., 97 Wn.2d 929, 933-34, 653 P.2d 280 (1982); RESTATEMENT (SECOND) OF

---

[13] Because all four elements of a negligence claim must be met, and Foe fails to prove the first element, we need not address Foe's arguments regarding the remaining elements.

TORTS § 390 (1965).[14] But the plain meaning of the word "entrustment" requires some manner of agreement or consent, either express or implied, to relinquish control of the instrumentality in question.[15]

The facts here, even when viewed in Foe's favor, do not show that Willson entrusted Foe with firearms. The evidence establishes that, when police officers arrived, Foe ran inside Willson's home and into a second-floor room. There is no evidence that Willson instructed Foe to run anywhere, much less that particular room. Once in that room, Foe found several of Willson's firearms. But there is no evidence that Willson affirmatively agreed to relinquish control of the firearms to Foe. Nor is there any evidence that Willson's firearms were loaded at the time. Consequently, Foe's negligent entrustment claim fails. The trial court correctly dismissed it.

F. Negligent Infliction of Emotional Distress

Foe argues that the trial court erred by summarily dismissing the negligent infliction of emotional distress claim because the court failed to consider evidence of Foe's symptomology.

---

[14] Section 390 provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of [their] youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to [themselves] and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

[15] See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 759 (2002) (defining "entrust" as "to confer a trust upon; commit or surrender to another with a certain confidence regarding [their] care, use, or disposal of."); BLACK'S LAW DICTIONARY 674 (11th ed. 2019) ("Entrust" means "To give (a person) the responsibility for something, usu[ally] after establishing a confidential relationship.").

14

In addition to establishing the elements of negligence, a plaintiff asserting a negligent infliction of emotional distress claim must establish that the emotional distress is "manifested by objective symptomatology." Hunsley v. Giard, 87 Wn.2d 424, 436, 553 P.2d 1096 (1976). "[T]here must be objective evidence regarding the severity of the distress and the causal link" between the defendant's actions and "the subsequent emotional reaction" of the plaintiff. Haubry v. Snow, 106 Wn. App. 666, 679, 31 P.3d 1186 (2001).

Here, Foe submitted only one exhibit—a Social Security Administration Notice dated June 20, 2018—in an attempt to support this claim. While the Social Security Notice concluded that Foe met conditions for disability payments as of April 2017, it did not correlate any of Foe's symptoms to a diagnosable emotional disorder that was proximately caused by the March 19-20 incidents giving rise to Foe's claims against Willson. Thus, Foe failed to satisfy the burden required. The trial court properly dismissed Foe's negligent infliction of emotional distress claim.

G. Other Evidence and Willson's Motion to Strike

Lastly, Foe also claims other documentation exist that satisfies the objective symptomology requirement, which Foe appends to the opening brief.

Foe failed to present this documentation to the trial court in response to Willson's summary judgment motion. "On review of an order granting or deny a motion for summary judgment the appellate court will consider only evidence and issued called to the attention of the trial court." RAP 9.12; see also Herron v.

15

Tribune Publ'g Co., 108 Wn.2d 162, 173 n. 4, 736 P.2d 249 (1987) ("On appeal of a summary judgment order we cannot consider evidence not before the trial court."). Thus, because Foe failed to bring this documentation to the trial court's attention, we will not now consider it on appeal.[16]

We affirm.

_Chun, J._

WE CONCUR:

_Andrus, J._

_Verellen, J._

---

[16] Foe asks us to consider the additional documentation and seeks to "supplement the record with further document should it be deemed helpful." Willson moves to strike the documentation appended to Foe's brief because Foe failed to present it to the trial court below. We grant Willson's motion to strike.