[No. 35178.   Department Two.   April 28, 1960.]

W. G. PLATTS, INC., *Appellant*, v. RUTHINE GUESS, *Respondent*.[1]

*Rudolph Naccarato* and *C. R. Sloniger*, for appellant.

*Pebbles & Swanson*, for respondent.

HILL, J.—Amidst the welter of charges and counter-charges there is only one issue here, *i.e.*, whether certain actions by the plaintiff warranted a dismissal of its action

[1]Reported in 351 P. (2d) 512.

against the defendant for converting five thousand dollars of the plaintiff's money to her own use.

The plaintiff, W. G. Platts, Inc., may be regarded (for the purposes of this appeal) as the alter ego of W. G. Platts; and we may hereafter, on occasion, use the personal pronoun "he" rather than "it" when referring to the plaintiff.

Stripped of all romance and personal animosities (and there was considerable of both), the contentions of the parties are:

PLAINTIFF: The defendant, who had been a trusted employee, was discharged April 14, 1958. Thereafter, having a signed blank check of the plaintiff in her possession, and without any right or authorization so to do, she made it payable to herself in the sum of five thousand dollars and cashed it April 17, 1958; and then converted the proceeds to her own use. Not until April the 28th was the plaintiff aware of the conversion of its funds. To give a semblance of legitimacy to her conduct, and to make it appear like a business transaction, the defendant executed an assignment to the plaintiff of her interest in a real estate contract, under which she was purchasing the property on which she had been living. (She used, for this purpose, a form designated "PURCHASER'S ASSIGNMENT OF REAL ESTATE CONTRACT AND DEED.") At the same time, April 17, 1958, she executed a bill of sale to the plaintiff covering certain designated furniture and any other furniture that might be left in the house on the property she had been purchasing. On the same day she filed both instruments in the county auditor's office with instructions to mail them to the plaintiff after the recording and indexing. She also notified the savings and loan association, where the payments on the real estate contract were being made, that her interest in that contract had been transferred to the plaintiff.

The plaintiff received the instruments from the county auditor about a week later; but had received a letter from the savings and loan association around April the 19th regarding the transfer to it of the defendant's interest in the real estate.

DEFENDANT: After a quarrel, the defendant was discharged April 14, 1958, by the plaintiff. At the plaintiff's request, she came back April 16, 1958, to help straighten out some bookkeeping problems. It was then agreed that she would transfer her furniture and all of her interest in the real property, which she was purchasing, to the plaintiff for five thousand dollars. At that time she was given a signed check, and specifically authorized to make it payable to herself in that amount. That, pursuant to the agreement, she executed the bill of sale of the furniture and the assignment of her interest in the real estate contract, coupled with a deed, and delivered them to the county auditor with instructions to mail them to the plaintiff after recording and indexing the instruments.

At this point, we have a clear-cut issue for a jury: a conversion or a sale.

No one will gainsay that the plaintiff cannot be forced to accept ownership of property, real or personal, by the receipt of transfers through the mail; and that, unless the "PURCHASER'S ASSIGNMENT OF REAL ESTATE CONTRACT AND DEED" or the bill of sale was actually accepted by it, there was no transfer as to either the interest in the real property or the furniture.

The plaintiff's subsequent conduct, with reference to the real and personal property, of course, bears on the issue of whether he had accepted the interest and title of the defendant which the instruments purported to transfer.

As indicated, the defendant was purchasing real estate on a contract; and the plaintiff made a fifty dollar payment on the contract on May 7, 1958 (which was explained as having been made so that no rights would be lost while the transaction was being investigated). The plaintiff thereafter executed a statutory warranty deed conveying the real property in question to the parties who were selling the property to the defendant, and delivered the same to the grantees named therein. This, it was explained, was done to clear the title and remove any question as to the plaintiff's interest in the property. He received no consideration for the deed. (Just why a conveyance by a warranty deed

to someone other than the defendant was necessary to accomplish the claimed purpose is not clear.) In any event, the trial court took the position that this was an exercise of dominion over the real property which conclusively established acceptance of the defendant's interest therein.

■ We will assume, without deciding, that this was so; but the trial court's further conclusion that such a finding terminated the plaintiff's action against the defendant for five thousand dollars was a *non sequitur*.

The fact, if it be a fact, that the plaintiff had accepted the assignment of the defendant's interest in the real estate contract might be convincing evidence in support of the defendant's position—that the assignment was part of the consideration for the five-thousand-dollar check—it did not, however, establish *ipso facto* that the five-thousand-dollar check had been given in consideration for the transfer of the defendant's furniture and her contract interest in the real property.

If the plaintiff were seeking to rescind a transaction and recover a purchase price, his conveyance of the property to a third person would have put it out of his power to restore the property he had received, and thus have precluded a rescission. *Gabalis v. Campbell* (1936), 185 Wash. 387, 55 P. (2d) 615; *Duke v. California Investment Co.* (1924), 132 Wash. 23, 231 Pac. 20. But the plaintiff was not seeking a rescission; his position was that there had been no agreement. It is still a question for the jury whether there was a conversion or a sale.

If the jury concludes there was a sale, that is the end of the whole matter; if the plaintiff has given away, or by his conduct rendered valueless what he bought, that is his responsibility.

If the jury concludes that the defendant converted five thousand dollars of the plaintiff's money to her own use, the plaintiff's conveyance of her interest in the real estate is not a ratification of anything because there was nothing to ratify. If, however, the plaintiff has by its actions, accepted the defendant's interest in the real estate contract and dis-

posed of that interest, it may well be responsible to her for its value.

We are not here determining what the defendant's rights may be in consequence of the plaintiff's actions; we simply hold that if the trial court was correct in its interpretation of the effect of the plaintiff's warranty deed to third parties, it was not conclusive evidence that there was a sale, and not a conversion; that issue remained a jury question.

█ The other issues raised on the appeal are completely without merit. There was no appeal from the judgment of March 30, 1959, discharging the then existing writs of garnishment; nor was any supersedeas bond furnished to supersede the order of March 18, 1959, dismissing the action for conversion from which an appeal was taken. See *State ex rel. Pioneer Mining & Ditch Co. v. Superior Court* (1919), 108 Wash. 183, 183 Pac. 74. The garnishments issued April 1, 1959, after the plaintiff's cause of action had been dismissed and when it had neither a judgment nor an action pending, were properly quashed. *Kelly v. Ryan* (1894), 8 Wash. 536, 36 Pac. 478. See *State ex rel. Platts v. Superior Court* (1960), 55 Wn. (2d) 714, 349 P. (2d) 1087.

█ The trial court did not err in refusing to receive, as evidence, plaintiff's letters, which were merely self-serving declarations. *Palin v. General Constr. Co.* (1955), 47 Wn. (2d) 246, 287 P. (2d) 325; *Boyer v. State* (1943), 19 Wn. (2d) 134, 142 P. (2d) 250; *Bond v. Werley* (1933), 175 Wash. 659, 28 P. (2d) 318.

The trial court erred, however, when it dismissed the plaintiff's second cause of action; and the cause is remanded with instructions to grant the plaintiff a new trial on his second cause of action.

Under the circumstances, costs will abide the final result of the action.

WEAVER, C. J., FINLEY, ROSELLINI, and OTT, JJ., concur.