[Nos. 39027, 39028.    Department Two.    March 28, 1968.]

W. G. PLATTS, INC., *Appellant*, v. CHARLES W. PLATTS *et al.*, *Respondents.*
W. G. PLATTS, INC., *et al.*, *Appellants*, v. CHARLES W. PLATTS *et al.*, *Respondents.**

*Donald J. Horowitz* (of *Farris, Bangs & Horowitz*), for appellants.

*Pebbles, Swanson & Lindskog*, for respondents.

WARD, J.†—These consolidated actions had their origin in events which occurred in 1958, and which, during the past 10 years, have blossomed and flowered into a total of seven civil actions, one criminal action, and now, the second appeal to this court.[1] It may be questioned whether the meta-

*Reported in 438 P.2d 867.

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1]The former appeal is *W. G. Platts, Inc. v. Guess*, 56 Wn.2d 143, 351 P.2d 512 (1960).

phor "blossomed and flowered" is apropos to events so filled with bitterness and ill will as the history of this lengthy dispute discloses. In our opinion, the disposition of these joint appeals does not require a round-by-round and blow-by-blow factual presentation of each of these many cases.

An understanding of the issues does require that we state the origin of the dispute and the basic precipitating facts.

On April 15, 1958, defendant Ruthine Guess Kennedy, who had been a trusted employee of W. G. Platts, Inc.,[2] was discharged. At that time, she held in her possession a check which had been signed by plaintiff Platts but was otherwise blank. She completed the check, making it payable to herself in the sum of $5,000, and cashed it on April 17, 1958. She then executed and recorded an assignment and quit-claim deed, conveying to plaintiff, Platts, her interest in her home, which she was buying on contract, and conveyed her household furniture to him by bill of sale. When the plaintiff received these instruments, he conveyed the home premises by warranty deed to the contract seller for reasons not apparent from the record.

On May 1, 1958, Platts caused the defendant, Kennedy, to be arrested and charged with misappropriating the $5,000. A jury acquitted her of the charge on February 25, 1959. In a civil action, brought against Mrs. Kennedy in Thurston County, the plaintiff, Platts, Inc., also failed to recover the $5,000. Mrs. Kennedy's position apparently was that she had not misappropriated the $5,000, but that the transaction amounted to a valid sale to which plaintiff had agreed. Mrs. Kennedy then brought an action against Mr. Platts, individually, and in his corporate capacity for abuse of process and malicious prosecution, and obtained an out-of-court settlement. The amount paid to Mrs. Kennedy on such settlement is not of record.

Five subsequent civil actions, one in federal court and four in King County Superior Court, were brought by

[2]In the previous appeal, we referred to W. G. Platts, Inc., as the alter ego of W. G. Platts. We shall continue to so regard it in this appeal and will refer to both the individual and the corporate plaintiffs as though W. G. Platts were the sole plaintiff.

Platts and were based on the same basic facts mentioned above. In several of the actions, the plaintiff joined as defendants Charles W. Platts, a brother of plaintiff, and Charles' wife, Hazel. All five of these civil actions were dismissed. All but one of the five judgments of dismissal were final judgments. The two final actions were dismissed on the defendants' motions for summary judgment. The appeals now before this court are from the judgments entered dismissing these two final actions.

Although all of the five civil actions vary slightly in form and in the amount and items of damages claimed, all five set out two basic claims; namely (1) that Mrs. Kennedy had unlawfully misappropriated $5,000 of the funds of W. G. Platts, and (2) that plaintiff's brother, Charles, and his sister-in-law, Hazel, were in possession of information in 1958 which, if revealed during the criminal prosecution of Mrs. Kennedy and in the civil action to recover the $5,000 from Mrs. Kennedy, would have resulted in both the conviction of Mrs. Kennedy and the recovery of the $5,000.

Although they were present in court, neither Charles nor Hazel Platts was called to testify in the criminal action. The record shows that both were available for the taking of depositions in the civil action against Mrs. Kennedy for the recovery of the $5,000, but that no such depositions were taken in that action.

In the two final actions, now before this court on appeal, the plaintiff charged in identical language in the complaints:

> [D]ue solely to the failure of her co-defendants herein, namely, Charles W. Platts and Hazel Pauline Platts, his wife, . . . falsely declaring to one Hewitt Henry, the then Prosecuting Attorney of Thurston County, that they had no information as to the said Ruthine Guess, now Ruthine Guess Kennedy, having made the check referred to . . . above payable to her own order without the consent, knowledge or authority of plaintiff . . . Ruthine Guess Kennedy . . . [was] found not guilty.

At the hearing on defendants' motions for summary judgment dismissing the last two actions, the trial court, by

stipulation, was permitted to consider the complete records in all of the preceding actions. Our examination of the records indicates that the trial court had before it nothing setting out what defendants Charles and Hazel Platts told the prosecuting attorney, except the allegations in plaintiff's complaints and the affidavit of the prosecuting attorney, in which he states in pertinent part:

> That previous to said trial, I caused Charles and Hazel Platts to be subpoenaed to testify at the trial, based upon the statement heretofore signed by Hazel Platts on May 8, 1958. That Charles and Hazel Platts appeared at the trial, but contacted my office, and Hazel Platts qualified her statement, and stated to me that she would not want to testify for fear that if she did, she would place the defendant in prison. That as a result . . . I felt in my own opinion that her testimony would be useless . . . .

These last two actions, commenced in 1965, again restate the plaintiff's claim that Mrs. Kennedy misappropriated $5,000, but it is now admitted that relitigation of the $5,000 claim against her is forever foreclosed. It is plaintiff's present position that the complaints again recite the historic facts with respect to the claimed misappropriation and the claimed suppression of evidence by Charles W. and Hazel Platts merely as evidence of overt acts alleged to support his claim that there exists, and has existed over the years, a "general conspiracy" between Mrs. Kennedy and Charles and Hazel Platts to damage and injure the plaintiff. In one complaint, plaintiff alleged that he has suffered general damages in the sum of $100,000 as a result of such "general conspiracy," and, in the other, he claims special damages in the sum of $33,462.98, allegedly required to pay for "attorney's fees, costs and various other expenses."

Plaintiff claims that this long continuing conspiracy is further evidenced by the persistent statements made by Charles and Hazel Platts in the taking of depositions in some of the prior civil actions wherein they "have falsely and maliciously denied that they knew that the said Ruthine Guess, now Ruthine Guess Kennedy, had willfully filled in the $5,000 check above referred to."

The plaintiff alleges:

That the actions above detailed by the defendant Ruthine Guess, now Ruthine Guess Kennedy and the actions of Charles W. Platts and Hazel Pauline Platts, his wife, were pursuant to a conspiracy entered into by and between said defendants which conspiracy had for its object the damaging of the plaintiffs in the business community in which such corporate plaintiff and such individual plaintiff each had a good and substantial standing and that such conspiracy was a continuing one and continued up to and well into the year 1964 and plaintiffs believe and therefore allege that said conspiracy is still continuing.

The complaints now before this court set out no overt acts claimed to have been committed by the defendants over the past 10 years in furtherance of the claimed conspiracy, except (1) Mrs. Kennedy's claimed misappropriation of the $5,000 and her claimed false testimony given in the criminal and civil actions based on this claim of misappropriation, and (2) suppression of evidence of the true facts and the giving of false testimony by Charles and Hazel Platts during the taking of their depositions.

■ We begin our discussion of the law of the case with a consideration of the place which the overt act occupies in the claim of damage in a civil action based on conspiracy. A text statement in 16 Am. Jur. 2d *Conspiracy* § 44 (1964) reads:

The gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff. Since damage must be shown in a civil action based on a conspiracy, no cause of action can exist in the absence of an overt act.

Another text statement is found in 15A C.J.S. *Conspiracy* § 21, at 664 (1967):

While an action may lie for damages suffered by reason of torts committed pursuant to a conspiracy, the conspiracy itself, without any actionable wrongs being done thereunder, ordinarily cannot be made the subject of a civil action, and may be of no consequence except as

bearing on the rules of evidence, the persons liable, or aggravation.

Section 5 of the same text states:

Unless an overt act has been committed, there is no civil liability for conspiracy.

. . . .

To create civil liability, however, there must have been an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object. (p. 606)

See, also, section 24 of the same text. It is unnecessary to lengthen this opinion by the citation of the innumerable decisions upon which these text statements are firmly supported.

W. Prosser, Law of Torts § 43, at 260 (3d ed. 1964), states:
There has been a good deal of discussion as to whether conspiracy is to be regarded as a separate tort in itself. On the one hand, it is clear that the mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime; and that some act must be committed by one of the parties in pursuance of the agreement, which is itself a tort. "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.

See, also, *Couie v. Local 1849, UBC,* 51 Wn.2d 108, 316 P.2d 473 (1957).

We are not here discussing the rule which applies in a criminal conspiracy case.

None of the overt acts set out in the complaints are actionable. The plaintiffs expressly disclaim the right to relitigate their claim to recover the $5,000 in this action. There remains only the charges of perjury leveled at Mrs. Kennedy in the civil and criminal actions, and the charge of perjury leveled at Charles and Hazel Platts during the taking of their depositions, together with prior unsworn statements made to the prosecuting attorney as to what their testimony would be if called as witnesses and which the plaintiff claims were untrue.

■   Perjury is, of course, a public offense and punishable in criminal proceedings, but from earliest times the giving of false testimony has not been treated as a wrong actionable in civil proceedings. This same immunity applies to statements made preliminary to testifying.

In 70 C.J.S. *Perjury* § 92 (1951), the rule is stated:

> The general rule, in the absence of statute, is that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury, whether committed in the course of, or in connection with, a civil action or suit, a criminal prosecution or other proceeding, and whether the perjurer was a party to, or a witness in, the action or proceeding.

*Kantor v. Kessler*, 132 N.J.L. 336, 40 A.2d 607 (1945), contains a well-reasoned statement of the legal principles underlying the rule.[3]

The plaintiff claims, however, that, if the acts are committed pursuant to a conspiracy, the rule is otherwise. Such is not the law where the claimed conspiracy is to commit a wrong by means of false and perjured testimony.

The text, 16 Am. Jur. 2d *Conspiracy* § 55 (1964), reads:

> A conspiracy to give or to procure the giving of false testimony is not actionable. The basis of this conclusion is

---

[3]See, also, Restatement of Torts § 588 (1938), where it is stated:

"A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto.
*Comment:*

"*a.* The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure be not hampered by fear of private suits for defamation. The compulsory attendance of all witnesses in judicial proceedings makes the protection thus accorded the more necessary. The witness is subject to the control of the trial judge in the exercise of the privilege. For abuse of it, he may be subject to criminal prosecution for perjury and to punishment for contempt.

"*b.* The rule stated in this Section protects a witness while testifying. It is not necessary that he give his testimony under oath; it is enough that he is permitted to testify. It also protects him while engaged in private conferences with an attorney at law with reference to proposed litigation, either civil or criminal."

that witnesses are brought into court under authority of the law and while there they are performing a public duty. A conspiracy to give or secure false testimony is an offense against the public only.

See, also, Annot., 139 A.L.R. 469 (1942); *Felts v. Paradise,* 178 Tenn. 421, 158 S.W.2d 727, 139 A.L.R. 467 (1942).

In *Ginsburg v. Halpern,* 383 Pa. 178, 180, 118 A.2d 201 (1955), the same claim was made which plaintiff now asserts. The court said:

We believe there is no civil action for perjury and apparently the plaintiff recognizes this doctrine of law but seeks to avoid it by claiming conspiracy. The courts have uniformly held that where such assertions have been made . . . they do not constitute a cause of action.

See, also, Annot., 54 A.L.R.2d 1298 (1957); Annot., 12 A.L.R. 1247, 1264 (1921).

It is the plaintiff's further contention that, even though the claim of conspiracy to commit perjury may not be actionable, he should be permitted to go to trial under the allegation of a "general conspiracy" to damage the plaintiff, and upon the allegation that such "conspiracy was a continuing one and continued up to and well into the year 1964 and plaintiffs believe and therefore allege that said conspiracy is still continuing."

We would agree that under the liberal concept of "claim" pleadings under the rules of court, adopted on December 11, 1958, and effective on January 1, 1960, and patterned upon the Federal Rules of Civil Procedure, the claim of general conspiracy to damage "the plaintiffs in the business community" would be an adequate vehicle upon which to ride into court, if the content of the vehicle was unchallenged.

However, Rule of Pleading, Practice and Procedure 56, RCW vol. 0, provides a method of challenging the content of the vehicle. Its purpose is to avoid a useless trial when there is no genuine issue of fact presented by the pleadings and the other documents on file.

The plaintiff, in effect, takes the position that if the complaint itself is sufficient to state a claim for relief, the facts

upon which it is based may not be successfully challenged in summary judgment proceedings. The United States Court of Appeals for the Third Circuit and a few of the other federal courts had sustained such positions until Fed. R. Civ. P. 56(e) was amended in 1963 by the addition of two sentences,[4] which do not appear in our rule:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Italics ours.)

This court has not formally adopted this amendment to Rule 56(e), but by decisional construction of the present rule the same end result has been attained.

In *Almy v. Kvamme,* 63 Wn.2d 326, 329, 387 P.2d 372 (1963), we said:

> The office of a summary judgment proceeding is to avoid a useless trial. It is to test, in advance of trial,

---

[4] 6 J. Moore, Federal Practice ¶ 56.01[14] at 2021 (2d ed. 1966), sets out the 1963 Committee Note to this amendment, part of which is as follows:

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not supposititious, conclusory, or ultimate. . . .

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. . . .

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

whether evidence to sustain the allegations in the complaint actually exists. Evidentiary pleadings alone, if properly challenged by controverting affidavits, depositions, and admissions presented by the moving party, will not carry the issue of fact to a trial. The object of a motion for summary judgment is to separate the wheat from the chaff in evidentiary pleadings, and to establish, at the hearing, the existence or nonexistence of a genuine, material issue. *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605 (1960). Applying these rules to the record before us, we find no genuine issue of a material fact which would prevent the trial court from granting respondents' motion for summary judgment.

Under facts very similar to the instant case, this court approved dismissal of a counterclaim for damages based on a conspiracy charge, because the claimants, when challenged, failed to come forth with a showing of overt acts to support the claim of conspiracy. In *Reed v. Streib,* 65 Wn.2d 700, 706, 399 P.2d 338 (1965), we said:

> As movant, Reed had the burden of showing that there was no such genuine issue of material fact. *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605 (1960); *Jorgensen v. Massart,* 61 Wn. (2d) 491, 378 P. (2d) 941 (1963). Reed did this when, in his affidavit in support of the motion, he denied the existence of any such conspiracy as that alleged by Davis in the formal allegations of his pleading and affidavit, which were unsupported by allegations of evidentiary facts. Thereafter, Davis was not justified in relying upon such bare allegations to carry him to trial. *Preston v. Duncan, supra.* The purpose of the summary judgment rule is to permit the court to pierce such formal allegations of facts in pleadings when it appears that there are no genuine issues. *Preston v. Duncan, supra.* . . .
>
> . . . .
>
> The whole purpose of summary judgment procedure would be defeated if a case could be forced to trial by a mere assertion that an issue exists without any showing of evidence. 3 Barron and Holtzoff, Federal Practice and Procedure § 1235, p. 141.

See, also, *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964).

In the instant case, plaintiff's claim of a general damaging conspiracy on the part of the defendants was challenged by the affidavit of the attorney who had handled the controversy between the parties for 10 years. He stated that, to his own personal knowledge, all of the acts and things complained of by the plaintiffs in the cases now before this court, if true, took place in 1958, 1959 and 1960. This affidavit was sufficient to require the plaintiff to submit to the trial court for its appraisal any facts on which he intended to rely to establish the conspiracy claim, other than the nonactionable allegations of overt acts set out in his complaints. He did not do so. No genuine issue of fact was shown, and to allow the case to go to trial would have constituted error. The orders of dismissal were proper and both judgments will be affirmed.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.

May 2, 1968. Petition for rehearing denied.