# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FILIP HANIK, and A.H. and T.H., Minor children of FILIP HANIK, Acting Through FILIP HANIK as Next Friend, | No. 60657-7-II |
| Appellants, | |
| v. | |
| TERESA HANIK, TURNING POINTS FOR FAMILIES, and LINDA GOTTLIEB, | UNPUBLISHED OPINION |
| Respondents. | |

MAXA, P.J. – Filip Hanik, on behalf of himself and as next friend for his adult daughter Alexandra Hanik and his minor daughter TH, appeals the trial court's grant of summary judgment in favor of Teresa Hanik, Linda Gottlieb, and Gottlieb's company Turning Points for Families (Turning Points).[1] Filip sued Teresa and Gottlieb for false imprisonment, intentional infliction of emotional distress (IIED), and "prima facie tort," which the trial court treated as a

---

[1] Because of their shared last name, we refer to everyone with the last name Hanik by their first name for clarity. We refer to Filip singularly, even though he sued on behalf of his daughters. Gottlieb appeared in the trial court on behalf of herself and Turning Points, but we also refer to them collectively as Gottlieb. No disrespect is intended. Gottlieb and Turning Points did not file a response brief in this court.

claim for civil conspiracy. Filip also appeals the trial court's grant of summary judgment on Teresa's abuse of process counterclaim and the court's award of attorney fees to Teresa under CR 11 regarding the prima facie tort claim.

Filip's lawsuit arose from the dissolution of Filip and Teresa's marriage, which resulted in a contentious and litigious parenting plan dispute involving their two children. Teresa apparently had a difficult relationship with the children. Filip and Teresa agreed to resolve their parenting plan issues through binding arbitration. Both parties agreed that the children would participate in intensive reunification therapy to mend Teresa's relationship with the children.

The arbitrator selected Teresa's proposed option for reunification therapy, Gottlieb and Turning Points, who would conduct reunification therapy in New York. In its order, the arbitrator provided instructions for how the children were to get to Turning Points in New York. Filip moved in superior court to vacate the arbitrator's order, which the court denied.

On the day Filip was required to bring the children to travel to Turning Points, he did not produce the children. Teresa secured a writ of habeas corpus from the superior court, and law enforcement brought them to the courthouse to go to Turning Points with Teresa. The children then threatened to kill themselves and were taken to the hospital. The superior court postponed the reunification therapy, and Teresa later withdrew her request for the children to attend Turning Points. Filip subsequently filed this lawsuit for damages.

We hold that (1) the trial court did not err in granting summary judgment in favor of Teresa and Gottlieb on Filip's claims, (2) Filip's arguments regarding Teresa's abuse of process counterclaim are moot because Teresa withdrew the counterclaim in the trial court, and (3) the trial court did not abuse its discretion in sanctioning Filip under CR 11 and its award of fees was reasonable.

Accordingly, we affirm the trial court's grant of summary judgment in favor of Teresa and Gottlieb and the court's CR 11 order.

FACTS

*Background*

Filip and Teresa previously were married and have two daughters, Alexandra (now an adult) and TH. As part of their dissolution proceedings, Filip and Teresa agreed to submit to binding arbitration to address unresolved issues, including a parenting plan. At the time, Alexandra was 16 and TH was 13. Although there is no specific information in the record about the children's relationship with Teresa, the course of proceedings leading to this appeal suggests that Alexandra and TH had a strained relationship with Teresa.

In October 2022, the arbitrator – a retired judge – entered a parenting plan for Teresa and Filip. The parenting plan initially required the children to live with Filip, with Teresa's amount of visitation increasing over time. The plan stated that the family would participate in "intensive intervention," and the arbitrator would select the provider. Clerk's Papers (CP) at 341. Teresa submitted information regarding Turning Points. The parenting plan further stated, "The parents will cooperate with any actions or documentation necessary to commence the intensive intervention." CP at 341.

The arbitrator subsequently ordered Filip and Teresa to have the children participate in Gottlieb's Turning Points program based in New York on specific dates. The order required Filip to facilitate the transportation of Alexandra and TH to New York, prohibited him from being within 60 miles of the intervention location, and prohibited him from contacting the children in any manner for 30 days. The arbitrator's order stated that the sequestration from Filip could be

extended on Gottlieb's recommendation or if any party violated the no contact provisions of the order.

Filip filed a motion to reconsider this ruling, which the arbitrator denied. The arbitrator stated,

> While I was disappointed with the filing of the motion, I was not surprised that Mr. Hanik would once again use this legal maneuver to delay the proceedings. This is true especially in view of his prior agreement to intensive residential reunification and his constant expressions of working toward a successful reunification by the children and mother.
>
> In deciding on the most appropriate treatment provider, I researched the proposed programs and consulted with Ms. MacNeill.[2]

CP at 356. The arbitrator awarded $1,500 in attorney fees to Teresa.

Filip then filed a motion in superior court to vacate the arbitrator's ruling selecting Gottlieb's Turning Points program for family reunification therapy. In a lengthy written order, the trial court denied the motion to vacate the arbitrator's ruling.

The arbitrator subsequently ordered Filip to exchange the children at the superior court judge's courtroom. And the judge then ordered Filip to present the children at his courtroom on a specific date and time. Filip did not appear with the children at the appointed time. The superior court granted a writ of habeas corpus for law enforcement to retrieve the children and bring them to the courthouse.

Five days later, a law enforcement officer brought the children to the courthouse. At a hearing, the superior court ordered the children into Teresa's custody to go to the treatment plan.

A law enforcement report indicated that after the officer told Alexandra and TH about the court's order to go with Teresa to Gottlieb's program, Alexandra stated that she was suicidal and

---

[2] The arbitrator's reference to "Ms. MacNeil" appears to refer to Lauren McNeil, a different family reunification therapist.

would hurt herself if she went with Teresa. TH similarly stated that she would hurt herself. The children then were transported to a local hospital. The hospital contacted the superior court, and they recounted that the children stated that they would kill themselves if transported to the airport for their reunification therapy.

As a result, the superior court postponed the children's participation in Gottlieb's program. The court appointed each of the children their own attorney and guardian ad litem. Teresa subsequently withdrew her request for the children to participate in Gottlieb's Turning Points for Families program.

*Lawsuit*

Filip filed a lawsuit on behalf of himself and as next friend of Alexandra and TH against Teresa, Gottlieb, and Turning Points. Filip's complaint declared that the facts in his complaint were true under penalty of perjury. Filip's verified complaint alleged the following:

- Teresa psychologically mistreated Alexandra and TH and traumatized them.

- Teresa conspired with Gottlieb and Turning Points to "use the Arbitrator's directive [for intensive reunification therapy] as a pretext for a coercive program that would force [Alexandra and TH] to reject [Filip] and to acquiesce in an award of custody to [Teresa]." CP at 7.

- Turning Points and Gottlieb's program was coercive and was designed to brainwash Alexandra and TH to "accept the custody and control of a parent who has mistreated them," and "Turning Points and Gottlieb, in exchange for a fee paid by [Teresa], agreed to attempt to apply such coercive treatment to [Alexandra] and T.H. in order to support a change of custody in [Teresa's] favor." CP at 7.

- Under direction from Gottlieb, Teresa urged the arbitrator to select Turning Points as the organization for intervention therapy. Teresa and Gottlieb "did not convey to the Arbitrator the true nature of the 'intervention' they had planned between them." CP at 7.

- "[D]ue to [Teresa and Gottlieb's] knowingly false and fraudulent representations, the intervention planned by Turning Points was to be drastically different from the previous one. . . . The new intervention was to be a drastic 'boot camp' experience in which the children were to be completely cut off from contact with [Filip] and his family and essentially forced to improve their relationship with [Teresa], whatever their wishes." CP at 8.

- Teresa and Gottlieb were aware that Alexandra and TH's mental health provider had warned in writing that Turning Points and its sequestration requirement could be psychologically harmful.

- Teresa and Gottlieb knew that sequestration from Filip could increase the children's risk for suicidal ideation or running away from home.

- Teresa and Gottlieb "used false representations to secure from [the trial court] a writ of *habeas corpus* that authorized the seizure of the children by police officers, with the goal of forcibly transporting the children to New York for the coercive program planned by [Teresa and Gottlieb]." CP at 9.

- Law enforcement's seizure of Alexandra and TH to deliver them to Teresa's custody was based on Teresa and Gottlieb's representations, and Teresa and Gottlieb participated in "efforts to traumatize the children." CP at 10.

- "The children remained in a state of enforced detention, prevented from leaving for several days. During this period they were subjected to emotional cruelty and suffered depression, anxiety, and trauma." CP at 10.

- Although Teresa withdrew her request for the children to participate in Turning Points, "[Teresa and Gottlieb] have continued to scheme collusively to find a way to renew the scheme and to enact their plot to psychological[ly] 'break' the children so that they accepted [Teresa] as custodial parent." CP at 10.

Filip asserted that Teresa, Gottlieb, and Turning Points were liable for (1) unlawful detention/false imprisonment, (2) IIED, and (3) what Filip described as "prima facie tort." Regarding Filip's "prima facie tort" claim, Filip stated that that Teresa, Gottlieb, and Turning Points "engaged in a conspiracy designed to subject two minor children to psychological torture, systemic abuse, manipulation and brainwashing." CP at 12.

In their answers, Teresa and Gottlieb asserted counterclaims for abuse of process.

*Teresa's Summary Judgment Motion*

Teresa filed a motion for summary judgment. Regarding Filip's false imprisonment claim, Teresa argued that there could be no false imprisonment because the children were taken into custody pursuant to a properly issued writ of habeas corpus.

Regarding Filip's IIED claim, Teresa argued that Filip could not establish a prima facie case of IIED. Teresa argued that Filip did not present any facts that her conduct was outrageous. Teresa also argued that her conduct was not outrageous because it was in furtherance of her attempt at reunification with the children, to which Filip had agreed until Filip did not receive the reunification therapist of his choice.

Teresa argued that Filip's civil conspiracy claim failed as a matter of law because he did not establish any facts supporting a conspiracy. Teresa also argued that because the trial court lawfully issued a writ of habeas corpus, there was no conspiracy to retrieve custody of the children.

Teresa asked the trial court to find that Filip engaged in an abuse of process because Filip continuously used litigation as a means of harassing Teresa. Teresa asserted that she had spent nearly $800,000 on attorney fees and costs between the dissolution proceedings, parenting plan, and Filip's damages lawsuit.

Teresa attached several exhibits to her motion. Teresa did not file a declaration attesting under penalty of perjury that the documents were true.

The following documents were attached as exhibits: (1) Filip and Teresa's stipulation to binding arbitration on all matters related to their divorce and parenting plan; (2) the arbitrator's parenting plan giving Filip initial custody of the children, with Teresa receiving increased visitation over time; (3) the arbitrator's order requiring the children to participate in Gottlieb's Turning Points program; (4) the arbitrator's order denying Filip's motion for reconsideration regarding his selection of the reunification program; (5) the superior court order denying Filip's motion to vacate the arbitrator's decision regarding the reunification therapy program; (6) excerpts of transcripts of proceedings in the superior court including Filip not bringing the children for reunification therapy on the day the superior court required, Teresa seeking a writ of habeas corpus, the superior court postponing reunification therapy because of the children's suicidal ideation, and deciding to appoint the children their own attorneys and guardians ad litem; and (7) the writ of habeas corpus and law enforcement report regarding the children.

In his response to Teresa's motion for summary judgment, Filip argued that Teresa's factual assertions were not competent evidence because they were not accompanied by a sworn affidavit attesting to their truthfulness. In addition, Filip argued that Teresa's factual allegations were not established by her evidence.

Filip also argued that Teresa did not rebut the allegations in Filip's verified complaint: that Teresa did not convey to the arbitrator the nature of Turning Points, lied in order to secure a writ of habeas corpus, had an agreement with Gottlieb to get custody of the children, and traumatized the children.

On the merits, regarding the false imprisonment claim, Filip recast his claim as several different claims: unlawful detention of a child, false arrest, and false imprisonment. Filip appeared to argue that because Teresa received a writ of habeas corpus due to "hoodwink[ing]" the arbitrator and superior court into a reunification plan, she engineered the wrongful detention of the children. CP at 503.

Regarding the IIED claim, Filip argued that there was a dispute of fact over whether Teresa's conduct was outrageous. Filip argued that Teresa's outrageous conduct was the wrongful detention of the children and Teresa's alleged threats to the children while they were detained. Filip also argued that even though Teresa was not present with the children when that occurred, she still could be liable for IIED.

Regarding his claim for "prima facie tort" or civil conspiracy, Filip appeared to argue that there were disputed facts due to his verified complaint. Filip also appeared to concede the fact that Teresa looked to hire Turning Points as a potential reunification option. Filip argued that this still was evidence of a conspiracy.

In his affidavit supporting summary judgment, Filip appears to allege additional facts. Most of Filip's alleged facts merely restate arguments from his summary judgment briefing that in his view, Teresa did not rebut his complaint's allegations. Filip denied attempting to interfere in reunification therapy, and stated that he only objected to the Turning Points program because he thought it was coercive.

Alexandra filed an opposition to Teresa's motion for summary judgment because she had turned 18 years old. In an affidavit, Alexandra stated that she was detained against her will by the police and experienced fear at the thought of being forced to reunite with Teresa.

The trial court granted Teresa's summary judgment motion on Filip's claims. The trial court stated that it specifically reviewed Teresa's motion, Filip's response, Filip's affidavit, Alexandra's affidavit and opposition, Teresa's reply, and a sealed guardian ad litem document. The court did not decline to review Teresa's exhibits even though they were attached to her motion rather than submitted through a declaration.

The trial court also granted summary judgment to Teresa on her abuse of process counterclaim. The trial court ruled that Filip did not seek appointment of a litigation guardian ad litem to pursue claims for the children and that Filip did not have legal authority to represent the children as minors in litigation. The court ruled that Filip's "brought the present lawsuit because of his frustration and disagreement from the underlying family law case." CP at 575.

*Gottlieb's Summary Judgment Motion*

Representing herself, Gottlieb also filed a motion for summary judgment on behalf of her and Turning Points. Gottlieb stated that the contents of her motion were true under penalty of perjury. In support of her motion, Gottlieb provided many of the same documents as Teresa's

motion for summary judgment. Filip's response to Gottlieb's motion repeated many of the same arguments from his response to Teresa's motion for summary judgment.

The trial court granted Gottlieb and Turning Points's motion for summary judgment regarding Filip's claims.

*Attorney Fee Motions*

Teresa filed a motion for attorney fees under CR 11 and injunctive relief to prohibit Filip from abusive use of litigation. Teresa requested all of her attorney fees both in Filip's damages claim and in the dissolution case. The trial court denied Teresa's request for attorney fees in the dissolution case because it was not properly before the court. The court also denied Teresa's request for attorney fees for Filip's damages claim because she still could pursue damages for her abuse of process counterclaim.

Teresa subsequently voluntarily dismissed her counterclaim. Gottlieb also withdrew her counterclaim. The trial court granted the dismissals.

Teresa then filed a new motion for attorney fees under CR 11. She argued that the trial court should sanction Filip because none of his claims had any basis in fact and was based on issues in the parenting plan proceedings that Filip previously had lost. Teresa requested approximately $35,000 in attorney fees and costs.

The trial court granted Teresa's motion for CR 11 sanctions. The court ruled that Filip improperly asserted a claim for "prima facie tort." The court noted that when Teresa responded to Filip's claims as a claim for civil conspiracy, Filip nonetheless pursued a claim for prima facie tort. The court's order stated that Filip failed to "present any credible, admissible evidence to show [a] material issue of fact," despite it being his ultimate burden to prove his claims. CP at 1298. The court found that Filip "failed to conduct a reasonable inquiry into the facts" and that

his litigation was "designed for an improper purpose." CP at 1299. The court ruled that CR 11 sanctions were appropriate only for Filip's prima facie tort claim.

The trial court ruled that Teresa's attorney's rate of $300 per hour was reasonable and awarded Teresa $4,500 in attorney fees for responding to Filip's prima facie tort claim.

Filip appeals the trial court's grant of summary judgment in favor of Teresa and Gottlieb and the trial court's order granting CR 11 sanctions to Teresa.

ANALYSIS

A.    STANDARD OF REVIEW

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). Summary judgment is appropriate when no genuine issues of material fact exist and the party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id.* But summary judgment can be determined as a matter of law if the material facts are not in dispute. *Antio, LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 134, 527 P.3d 164 (2023).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). A defendant can meet this burden by asserting that the plaintiff cannot support their claim with any evidence. *Id.* The burden then shifts to the plaintiff to present specific facts that establish a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

We view all the evidence and apply reasonable inferences in the light most favorable to the nonmoving party. *Mihaila*, 21 Wn. App. 2d at 231. We must assume that a nonmoving

party's declaration is true even if it is self-serving. *Mackey v. Home Depot USA*, Inc., 12 Wn. App. 2d 557, 575, 459 P.3d 371 (2020). However, a party cannot defeat a motion for summary judgment by relying on " 'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.' " *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). In other words, "an adverse party may not rest upon the mere allegations or denials of a pleading, but a response . . . must set forth *specific facts* showing that there is a genuine issue for trial." CR 56(e) (emphasis added).

We can affirm a trial court's grant of summary judgment on any ground supported by the record. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

B.    EVIDENTIARY ISSUES

1.    Lack of Sworn Affidavit

Filip argues in a footnote that the trial court erred when it considered Teresa's exhibits to her summary judgment motion because they were not accompanied by a sworn affidavit. We disagree.

"CR 56(e) requires that evidence offered in support of or in opposition to a motion for summary judgment be in the form of sworn affidavits or declarations made under penalty of perjury." *Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 326, 300 P.3d 431 (2013).

We review de novo evidentiary issues on summary judgment. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). The issue here is whether materials attached to a summary judgment motion without an attestation under oath that the materials are authentic can be considered when ruling on the motion.

First, Filip did not properly raise this issue on appeal. He did not assign error to the trial court's consideration of Teresa's materials. And he addresses the issue only in a footnote. We may decline to address arguments raised only in a footnote. *See Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 497, 254 P.3d 835 (2011).

Second, the preferable procedure would have been to attach the exhibits to a declaration, and it is unclear why Teresa's counsel did not file such a declaration when Filip raised the issue. However, the validity of the attached documents is not subject to legitimate dispute. They consist of the arbitration agreement to which both parties agreed, arbitrator and superior court orders, superior court transcripts, and a law enforcement report. Filip does not challenge the authenticity of these documents. In fact, Filip himself relied on some of the materials that Teresa submitted.

Third, many of Teresa's materials were attached to Gottlieb's summary judgment motion, which she attested as true under penalty of perjury. Therefore, most of these materials were properly before the trial court.

Based on these considerations, we will consider these materials in our review of the trial court's summary judgment orders.

2.  Failure to Dispute Facts in the Complaint

Filip argues that Teresa's and Gottlieb's motions for summary judgment failed to rebut the allegations in his complaint, creating a genuine dispute of fact that made summary judgment improper. We disagree.

Filip misapplies the relevant rule for summary judgment. Teresa and Gottlieb, as the defendants in the proceeding, were not required to rebut Filip's allegations in their summary judgment motions. Rather, CR 56(b) permits a defendant to move for summary judgment by

asserting that the plaintiff has no competent evidence to support the claims the plaintiff has the burden of proving at trial. *Sartin*, 15 Wn. App. 2d at 172. The burden then shifted to Filip, as the responding party to the motion, to provide specific facts establishing a genuine dispute of material fact. *Id.*; CR 56(e).

## C. FALSE IMPRISONMENT

Filip argues that the trial court erred when it granted summary judgment in favor of Teresa and Gottlieb on his false imprisonment claim. We disagree.

### 1. Legal Principles

"In an action for false imprisonment, the plaintiff must prove that the liberty of his or her person was restrained." *Moore v. Pay 'N Save Corp.*, 20 Wn. App. 482, 486, 581 P.2d 159 (1978). A person's liberty is restrained when he is denied the freedom to "remain in the place of his lawful choice." *Id.* A person may be restrained by force, threat of force, or conduct that reasonably implies force will be used. *Id.*

A third party can be liable in tort if it "contributes to another's *unlawful* arrest or detention." *Roy v. Pioneer Human Res., Inc.*, 27 Wn. App. 2d 273, 278, 533 P.3d 446 (2023). "An arrest that is without probable cause because it is based on purposefully false information would be unlawful." *Id.*; *see also Turngren v. King County*, 104 Wn.2d 293, 304, 309, 705 P.2d 258 (1985) (holding that a law enforcement officer can be liable for deliberately conveying false information to a magistrate in support of a search warrant that leads to a detention.

### 2. Analysis

Here, Filip argues that the children were unlawfully detained when Teresa obtained a writ of habeas corpus for them through Teresa and Gottlieb's false statements to the arbitrator and the superior court judge who issued the writ, resulting in the children's unlawful detention.

15

There is no indication that the superior court issued the writ of habeas corpus based on any misrepresentation. Filip and Teresa agreed to binding arbitration. The arbitrator's parenting plan required the family to participate in intensive intervention, and stated that the arbitrator would select the provider. Pursuant to that parenting plan, the arbitrator selected Turning Points to conduct reunification therapy. And that binding arbitration order required Filip to deliver the children to participate in reunification therapy. The superior court declined to vacate that order.

Later, the arbitrator ordered Filip to produce the children. Further, pursuant to the arbitrator's facially valid orders, the superior court ordered Filip to produce the children at a specified time and issued a writ of habeas corpus when he refused. The superior court simply was enforcing the arbitrator's orders, which both Filip and Teresa agreed would be binding.

Filip alleged in his complaint that Teresa used false representations to secure the writ of habeas corpus. But he does not identify those misrepresentations. And the only representations Teresa made in the superior court involved the existence of the arbitrator's binding orders.

Filip argues that Teresa or Gottlieb engaged in misrepresentations that caused the arbitrator to select Turning Points for reunification therapy. In his complaint, Filip alleged that Teresa and Gottlieb "did not convey to the Arbitrator the true nature of the 'intervention' they had planned between them." CP at 7. He also alleged that Teresa and Gottlieb made "false and fraudulent representations" about the Turning Points program. CP at 8.

But these are merely allegations based on speculation. Filip's complaint does not provide any specific facts regarding what Teresa or Gottlieb told the arbitrator. Filip also does not provide any specific facts regarding whether the arbitrator was influenced by anything Teresa or Gottlieb said. In fact, the arbitrator expressly stated that he conducted his own investigation. Therefore, even viewing the evidence favorable to Filip, there is no genuine dispute of material

16

fact regarding whether Teresa or Gottlieb made misrepresentations that caused the arbitrator to issue his order.[3]

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Teresa and Gottlieb on Filip's false imprisonment claim.

D.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Filip argues that the trial court erred when it granted summary judgment in favor of Teresa and Gottlieb on his IIED claim. We disagree.

1.    Legal Principles

A claim for intentional infliction of emotional distress, also known as outrage, requires proof that the defendant engaged in " '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.' " *Trujillo v. Nw Tr. Servs., Inc.*, 183 Wn.2d 820, 840, 355 P.3d 1100 (2015) (quoting *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014)). Conduct is extreme and outrageous where it is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Trujillo*, 183 Wn.2d at 840 (quoting *Lyons*, 181 Wn.2d at 792).

In general, the elements of outrage are factual questions for the jury. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 869, 324 P.3d 763 (2014). However, on summary judgment a trial court must make an initial determination as to whether the conduct at issue is so extreme and outrageous that it could result in liability. *Trujillo*, 183 Wn.2d at 840.

---

[3] Filip argues that he could have generated evidence of Teresa's and Gottlieb's misrepresentations if he were permitted discovery. But the record does not indicate that Filip propounded any discovery on Teresa or Gottlieb, and Filip did not move to continue the summary judgment motion under CR 56(f). Therefore, we decline to address this argument. RAP 2.5(a).

2. Analysis

Filip argues that Teresa and Gottlieb engaged in outrageous behavior by orchestrating the kidnapping of the children through a writ of habeas corpus issued because of their misrepresentations. We disagree.

As discussed above regarding false imprisonment, Teresa requested and the superior court issued the writ of habeas corpus to enforce the arbitrator's binding orders. There is nothing outrageous about obtaining a court order to enforce the arbitrator's orders, which Filip agreed would be binding. And Filip fails to provide any specific facts to support his allegation that Teresa and Gottlieb made misrepresentations in order to obtain the arbitrator's order. These allegations are based on speculation and fail to create a genuine dispute of material fact for the reasons previously stated.

As a matter of law, we conclude that Teresa and Gottlieb's conduct does not meet the required threshold for extreme and outrageous conduct. Acting pursuant to a lawfully issued order does not exceed " 'all possible bounds of decency' " and cannot be considered " 'utterly intolerable in a civilized community.' " *Trujillo*, 183 Wn.2d at 840 (quoting *Lyons*, 181 Wn.2d at 792). And there is no evidence that Gottlieb engaged in any conduct with the children.

Accordingly, we hold that the trial court did not err when it granted summary judgment in favor of Teresa and Gottlieb on Filip's IIED claim.

E. CIVIL CONSPIRACY

Filip argues that the trial court erred when it granted summary judgment to Teresa and Gottlieb on Filip's "prima facie tort" claim, which the trial court interpreted as a civil conspiracy claim. We disagree.

18

    1.   Legal Principles

When asserting a claim for civil conspiracy, a plaintiff must establish " 'by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.' " *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 470, 389 P.3d 709 (2017) (quoting *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)). But a civil conspiracy claim fails if the underlying act or claim is not actionable. *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 439, 438 P.2d 867 (1968); *see also Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) ("[C]ivil conspiracy does not exist independently – its viability hinges on the existence of a cognizable and separate underlying claim.").

    2.   Analysis

Here, it is undisputed that Teresa sought out Gottlieb to use Turning Points for reunification therapy. However, Filip fails to establish a triable dispute that Teresa or Gottlieb did this for an unlawful purpose.

Filip argues that Teresa and Gottlieb's agreement to use Turning Points was to achieve an unlawful purpose of creating misrepresentations to the arbitrator about the psychological aspects of Turning Point's "abusive" programming, resulting in the children's unlawful detention. However, as previously discussed, the children's detention pursuant to the writ of habeas corpus was not unlawful. And although there may be genuine professional disputes about the propriety of Turning Points's methods, this alone does not show an unlawful purpose with respect to Teresa and Gottlieb's *agreement* to use Turning Points as a reunification therapy program.

In addition, a civil conspiracy claim fails if the underlying act or claim is not actionable. *W.G. Platts*, 73 Wn.2d at 439. We hold above that Filip's claims for false imprisonment and IIED are not actionable. And the unlawful purpose that grounds Filip's conspiracy claim is the same as his other claims: that Teresa and Gottlieb lied in order to receive a favorable arbitration ruling and a writ of habeas corpus, and have the children participate in reunification therapy. Because these claims are not actionable, Filip's claim for civil conspiracy based on the same allegedly unlawful conduct must fail.

F.      ABUSE OF PROCESS

Filip argues that the trial court erred in granting summary judgment to Teresa on her counterclaim for abuse of process. However, Teresa voluntarily withdrew her counterclaim for abuse of process after the trial court issued its summary judgment order. An issue is moot if we no longer can provide effective relief. *Gonzales v. Inslee*, 2 Wn.3d 280, 289-90, 535 P.3d 864 (2023). Here, we cannot provide effective relief because Teresa's counterclaim no longer is part of the lawsuit. Therefore, this issue is moot.

G.      CR 11 SANCTIONS

Filip argues that the trial court erred when it awarded Teresa $4,500 in attorney fees as CR 11 sanctions. We disagree.

1.    Legal Principles

We review the trial court's imposition of CR 11 sanctions for an abuse of discretion. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 483, 491 P.3d 1012 (2021).

CR 11 requires parties not represented by an attorney to certify that a motion is "(1) well grounded in fact; (2) warranted by existing law or a good faith argument for a change to established law; (3) not interposed for any improper purpose, such as to harass or delay; and (4)

any denials of factual contentions are warranted on the evidence or reasonably based on belief." CR 11(a). "The trial court may impose sanctions for violations of CR 11, including reasonable attorney fees." *Dzaman*, 18 Wn. App. 2d at 483; *see also* CR 11. Litigants representing themselves are held to the same standard as an attorney. *In re Vulnerable Adult Pet. of Winter*, 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020).

    2.   Analysis

    a.   Imposition of CR 11 Sanctions

Here, the trial court correctly determined that Filip's claim for "prima facie tort" was not a recognized cause of action in Washington. *See Pleas v. City of Seattle*, 112 Wn.2d 794, 803, 774 P.2d 1158 (1989). Therefore, Filip's claim was not warranted by existing law under CR 11. And when told that prima facie tort was not a valid cause of action, Filip nonetheless continued to pursue that claim. In addition, the trial court determined that CR 11 sanctions were appropriate because Filip brought his claim for prima facie tort with an improper purpose. The standard of review is abuse of discretion. *Dzaman*, 18 Wn. App. 2d at 483. We conclude that the trial court did not abuse its discretion in finding this conduct sanctionable.

    b.   Amount of Fee Award

Filip also argues that the trial court erred when it awarded $4,500 in attorney fees as CR 11 sanctions. We disagree.

Filip argues that Teresa did not identify how much her attorney spent on the prima facie tort claim. However, Teresa's attorney provided a declaration of her fees through billing statements, and her CR 11 motion requested over $30,000 in fees for the entirety of the litigation. The billing statements showed the amount of time expended on work for Teresa's case. The trial court determined that CR 11 sanctions were appropriate only for Filip's prima facie tort claim,

and proportionally reduced the fee amount to cover what it thought was reasonable for responding to that claim. We conclude that this was not an abuse of discretion.

Filip argues that because responding to Filip's prima facie tort claim was a small portion of Teresa's summary judgment motion, it could not reflect 15 hours of Teresa's attorney's time. But there were multiple reasons that a reasonable attorney could spend 15 hours on addressing Filip's prima facie tort claim, such as understanding unclear briefing and identifying what Filip meant by "prima facie tort."

We hold that the trial court did not abuse its discretion when it awarded Teresa $4,500 in attorney fees as CR 11 sanctions.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Teresa and Gottlieb and the court's CR 11 order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
CRUSER, J.

22